```
            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF KANSAS
```

**JAMES McKEIGHAN,**

                **Plaintiff,**

      v.                              CASE NO.  08-3173-SAC

**CORRECTIONS CORPORATION**
**OF AMERICA, et al.,**

                **Defendants.**

### O R D E R

This civil complaint was filed by an inmate confined at the Corrections Corporation of America (CCA)/ Leavenworth Detention Center (LDC). Plaintiff alleges he is "being detained in custody by the United States Marshals." Court records indicate Mr. McKeighan was tried by a jury in federal court in Kansas City, Kansas, and found guilty in December, 2007, of possession of drugs with intent to distribute and illegal possession of firearms. He was sentenced on July 24, 2008, to 293 months imprisonment with 96 months supervised release. <u>U.S.A. v. McKeighan</u>, Case No. 2:06-cr-20066-JWL-1. He has filed a Notice of Appeal in the criminal case.

### DEFENDANTS

Plaintiff names as defendants in this action Terra Morehead, Assistant United States Attorney and a prosecutor in his criminal case; Mike Shute, United States Marshal; and several employees of the CCA/LDC: Fredrick Lawrence, former Warden; Sheldon Richardson, current Warden; Robert Mundt, Assistant Warden; Ken Daugherty, Chief of Unit Management; Bruce Roberts, Chief of Security; George Green, Lieutenant in charge of segregation; and Melanie Fulton, "in charge

of" the commissary, warehouse and laundry. This cause of action is asserted under both 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

**FACTUAL BACKGROUND**

As the factual basis for this action, Mr. McKeighan complains about numerous events in chronological order beginning with his arrest and placement at the CCA in April, 2006, and various conditions throughout his detention at the CCA, which he asserts have amounted to violations of his constitutional rights. Interspersed with plaintiff's complaints regarding the conditions of his confinement, are complaints regarding alleged actions of prosecutor Morehead[1], his defense counsel[2], and the U.S. Marshals during his criminal proceedings and challenges to his criminal prosecution in general[3].

**CLAIMS AND REQUESTED RELIEF**

---

[1] For example, plaintiff claims that defendant AUSA Morehead harassed his defense attorneys and others; required his attorneys to sign improper agreements not to disclose discovery materials to McKeighan; filed "enhancement charges" after he would not take her "bogus plea offer," added a fourth count to the indictment once she realized he was fighting the criminal case; tried to create conflicts of interest between him and his attorneys, took his attorney's retainer fee, threatened his attorneys and a witness with prosecution, and during trial threatened and coerced Bledsoe and Orr to tell lies on him.

[2] For example, plaintiff claims that one of his defense attorneys tried to talk him into pleading guilty to something he wasn't even charged with, and that he did not know what he was charged with until 210 days after he was incarcerated. At least four defense attorneys were terminated during his criminal proceedings.

[3] For example, plaintiff claims he was not allowed to see his discovery until 515 days after he was incarcerated; that he sent a motion to submit witnesses and exhibits for trial to the court asking the judge to enter the note written by Mike Orr for his defense, which was the same letter his defense attorney Kips had revealed to AUSA Morehead; and that he asked the judge to enter the envelop from his mother's letter stamped return to sender, which he had been told was a mistake, as proof of harassment by Morehead. He also alleges that the prosecutor now admits Orr wrote the note, and that Morehead told Orr to lie to the jury by saying Bledsoe wrote it in an attempt to obstruct justice.

Plaintiff asserts that his rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments have been violated. He asks the court to declare that the acts and omissions described in his complaint violated his constitutional rights, issue a preliminary and permanent injunction, and award compensatory and punitive damages with costs.

**MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS**

Plaintiff has filed a motion for leave to proceed in forma pauperis (Doc. 2), and attached an Inmate Account Statement in support as statutorily mandated. He has already sought leave to proceed in forma pauperis in a prior civil action in this court, Case No. 08-3003, and has submitted an initial partial filing fee in that case[4]. Plaintiff must pay the initial partial filing fee and the remainder of the full filing fee of $350.00 due in his prior case. After he has satisfied the filing fee in his prior case, he must pay the fee of $350.00 due for filing this civil action. Payments will be deducted from his inmate account pursuant to 28 U.S.C. § 1915(b) for that purpose until the fees due in both cases have been paid in full.

**SCREENING**

Because Mr. McKeighan is a prisoner, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which

---

[4] Pursuant to 28 U.S.C. §1915(b)(1), plaintiff is obligated to pay the full $350.00 district court filing fee in this civil action. Being granted leave to proceed in forma pauperis entitles him to pay an initial partial filing fee and the remainder due over time through payments deducted automatically from his inmate trust fund account as authorized by 28 U.S.C. §1915(b)(2).

3

relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b). Having screened all materials filed, the court finds the complaint is subject to being dismissed for reasons that follow.

**CLAIMS REGARDING FEDERAL CRIMINAL PROSECUTION PREMATURE**

Many of the claims regarding events alleged to have occurred during plaintiff's criminal prosecution as well as actions or inactions of the prosecutor and defense counsel have been the subject of motions filed by Mr. McKeighan in his criminal case, including those claiming ineffective assistance of counsel, denial of right to be represented by the attorney of his choice, and denial of court access. It follows that plaintiff has already had these claims determined by the proper federal district court. Moreover, he must now raise any challenges to his conviction or sentence in his direct appeal. He may not at this time recover money damages or other relief in this action based upon any of his claims that, if proven, would render his conviction or sentence invalid. See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). Instead, before he may seek such relief in a civil rights action, he must prove that his conviction or sentence has been reversed on direct appeal or by some other appropriate process. Id. Since he stands convicted and sentenced, and has just begun his direct criminal appeal, he obviously cannot make this necessary showing. The court concludes that plaintiff's claims, which in essence are challenges to his conviction and sentence, are barred by Heck and must be dismissed, without prejudice.

The court also notes that state and federal prosecutors are

4

generally immune to suit for money damages for actions taken within the course of their official duties in a criminal prosecution. Imbler v. Pachtman, 424 U.S. 409 (1976); Butz v. Economou, 438 U.S. 478, 509 (1978); Robinson v. Volkswagenwerk AG, 940 F.2d 1369, 1373-74 (10th Cir. 1991).

## **CONDITIONS OF CONFINEMENT CLAIMS**

The court further finds from the face of the complaint that plaintiff fails to present a cause of action under either 42 U.S.C. § 1983 or 28 U.S.C. § 1331. Plaintiff's complaints regarding conditions of his confinement at the CCA are against the CCA and employees of the CCA. "To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution or law of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48-49 (1988); *citing* Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986); Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 155 (1978); Northington v. Jackson, 973 F.2d 1518, 1523 (10th Cir. 1992). Plaintiff names the CCA at Leavenworth as a defendant in this action; however, the CCA is not a "person" amenable to suit under Section 1983.

Plaintiff also names several employees of the CCA as defendants. However, employees of the CCA at the Leavenworth Detention Center are not state actors or state employees, and

therefore do not act "under color of state law[5]."  Instead, the CCA is a private contractor employed by an agency of the United States, usually the United States Marshals Service or the Federal Bureau of Prisons, to house its federal prisoners.  It follows that plaintiff does not state a cause of action under 42 U.S.C. § 1983 against the defendant CCA employees.  See Blum v. Yaretsky, 457 U.S. 991, 1004-05 (1982)(decisions of physicians of privately owned and operated nursing home to transfer Medicaid patients not state action); cf., West v. Atkins, 487 U.S. 42, 55-56 (1988)(A private physician who contracted with a state prison to treat inmates to satisfy the state's constitutional obligation to provide medical care, was held to be a state actor based upon his functions within the state system.).

Nor does plaintiff have an established cause of action against CCA employees under 28 U.S.C. § 1331 and Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 395-97 (1971).  Bivens held that "plaintiffs may sue federal officials in their individual capacities for damages for Fourth Amendment violations, even in the absence of an express statutory cause of action analogous to 42 U.S.C. §1983."  Id.; Carlson v. Green, 446 U.S. 14, 18 (1980)(recognizing a parallel cause of action for Eighth Amendment violations).  However, the proper defendant in a Bivens action is a federal official or agent, not an employee of a private

---

[5] The "under color of state law" requirement is a "jurisdictional requisite for a § 1983 action."  West, 487 U.S. at 42; Polk County v. Dodson, 454 U.S. 312 (1981).  A defendant acts "under color of state law" when he "exercise[s] power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  Id. at 49; Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982); Yanaki v. Iomed, Inc., 415 F.3d 1204, 1208 (10th Cir. 2005), cert. denied, 547 U.S. 1111 (2006).

6

corporation.  See Correctional Services Corp. v. Malesko, 534 U.S. 61 (2001); Peoples v. CCA Detention Centers, 422 F.3d 1090, 1101 (10th Cir. 2005)(There is no right of action for damages under Bivens against employees of a private prison for alleged constitutional deprivations, when alternative state causes of action for damages are available to the plaintiff.).  Kansas law provides an inmate with a remedy against CCA employees for actions amounting to violations of federal constitutional rights.  See Peoples, 422 F.3d at 1105.  Thus, plaintiff has not presented a valid jurisdictional basis for a cause of action in federal court.  Plaintiff will be given time to show cause why this action should not be dismissed for failure to present a cause of action under either § 1983 or § 1331 and Bivens[6].

**FAILURE TO STATE FEDERAL CONSTITUTIONAL CLAIM**

The court notes that even if plaintiff were able to allege a cause of action under § 1331, his complaints regarding actions or inactions by "CCA employees" are either conclusory or the facts alleged fail to state a federal constitutional claim.  A pro se complaint must be given a liberal construction.  See Haines v. Kerner, 404 U.S. 519, 520 (1972); See Jackson v. Integra Inc., 952 F.2d 1260, 1261 (10th Cir. 1991).  However, the court cannot assume the role of advocate for the pro se litigant, and "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  Whitney v.

---

[6] At the same time, plaintiff should consider whether or not to immediately file his claims against private tortfeasors in state court, cf. Malesko, 534 U.S. at 61, and pay attention to the statute of limitations, which is that under Kansas law.

7

New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997); see Kempf v. City of Colorado Springs, 91 Fed. Appx 106, 107 (10th Cir. 2004). Moreover, a broad reading of the complaint does not relieve the plaintiff of the burden of alleging sufficient facts to state a claim on which relief can be based. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)(Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.); see Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996). "This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." Id. The court briefly comments upon some of plaintiff's claims and their deficiencies apparent from the complaint.

### I.  Eighth Amendment Claims

At the end of his complaint plaintiff summarizes his claim of cruel and unusual punishment under the Eighth Amendment as based upon denial of sanitation and personal hygiene needs, adequate food, exercise, air quality, and temperature, as well as overcrowding[7]. A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment only when two requirements are met.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994). First,

---

[7] In his complaint, his allegations in support include that: (1) for days he was denied more than one set of clean, unstained clothes; (2) he was not provided "basic supplies" weekly; (3) an attempt was made to overcrowd his cell; (4) temporary restrictions have occasionally been placed upon his recreation time; (5) he was temporarily locked down for 24 hours per day; and (6) he was denied a shower for 4 to 5 days and was not allowed to shower every day during his trial. Plaintiff alleges that defendant Green attributed some of these deprivations to CCA being understaffed.

8

objectively, the deprivation alleged must be sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. Id. Second, the official must have acted with a sufficiently culpable state of mind, namely deliberate indifference to inmate health or safety. Id. Thus, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." Id. at 837.  The Supreme Court has noted that conditions of confinement may be restrictive and even harsh, without constituting cruel and unusual punishment under the Eighth Amendment.  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

While plaintiff has alleged a few conditions which presumably caused discomfort, he has not alleged facts showing deprivations so cruel or prolonged as to have posed a serious risk of danger to his life or health.  Thus, he has failed to state a claim for violation of the Eighth Amendment[8].

### II.  Denial of Access

Plaintiff claims defendants denied him access to the prison law library and telephones as well as interfered with his legal mail and attempts to file administrative grievances.  He asserts his rights under the First Amendment and of access to the courts have been violated.  An inmate asserting a denial of access to the courts must satisfy the standing requirement of "actual injury" by showing that

---

[8] Plaintiff's complaints that defendant Morehead and U.S. Marshals ordered CCA officials to subject him to unconstitutional conditions are supported by no factual allegations whatsoever, and appear to be nothing more than speculation.

the alleged denial of legal resources actually hindered his efforts to pursue a nonfrivolous claim.  Lewis v. Casey, 518 U.S. 343, 351- 352 (1996); Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir. 1996). It is not enough to simply state that he was provided insufficient time in the prison law library.  Plaintiff alleges no facts showing actual injury.  In addition, providing law library facilities to inmates is merely "one constitutionally acceptable method to assure meaningful access to the courts."  Id. at 351, *citing* Bounds v. Smith, 430 U.S. 817, 830 (1977).  It follows that the inmate represented by counsel in a pending action, is not entitled to a law library.  Moreover, rather than having been denied access, Mr. McKeighan has managed to file this and another lawsuit in federal court.  Plaintiff's complaints regarding restrictions on his phone use, improper reading of his legal mail, and lost or ignored grievances[9] also fail to include any allegations showing actual injury to his pursuit of a non-frivolous legal claim.  It follows that plaintiff has failed to state a claim of denial of access to the courts.

---

[9]      While the court does not condone officials at the CCA either losing or ignoring inmate grievances, and would not dismiss a civil rights action for failure to exhaust in the face of these not-unfamiliar allegations, prison inmates have no federal constitutional right to a grievance procedure while incarcerated. See Adams v. Rice, 40 F.3d 72, 75 (4 th Cir. 1994), cert. denied, 514 U.S. 1022 (1995); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Walters v. Corrections Corp. of America, 199 Fed.Appx. 190, 191 (10 th Cir. 2004)("When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance."), cert. denied, 546 U.S. 865 (2005); Sims v. Miller, 5 Fed.Appx. 825, 828 (10th Cir. 2001)([I]nsofar as plaintiff contended that CDOC officials failed to comply with the prison grievance procedures, he failed to allege the violation of a federal constitutional right."); see also for collection of cases: Walker v. Mich. Dept. of Corrections, 128 Fed.Appx. 441, 445 (6th Cir. 2005, unpublished); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.), cert. denied, 488 U.S. 898 (1988). The inmate's right to be heard is that of access to the courts, and plaintiff's right of access is not shown in this case to have been impeded by the CCA's failure or refusal to answer his grievances, even accepted as true.

Plaintiff's complaints regarding phone restrictions also fail to state a First Amendment claim since he does not allege he had no alternative means of communication. Moreover, allegations in his complaint, exhibits, and the criminal trial record indicate that restrictions on telephone communication with his counsel were remedied by the judge during his criminal proceedings, and even that a rational basis may have existed for some restrictions.

### III. Deprivation of Personal Property

Plaintiff claims his constitutional rights under the Fourth and Fifth Amendments were violated in that some of his personal property was stolen or disappeared[10]. However, even if he could show state action, his allegations fail to state a due process violation. Hudson v. Palmer, 468 U.S. 517, 532-34 (1984)("An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."); see also Parratt v. Taylor, 451 U.S. 527, 540-42 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986). Whether negligent or intentional, deprivations of personal property

---

[10] The property allegedly lost or stolen was legal materials, trial exhibits, grievances, pictures of three old girlfriends, pictures of pet animals, personal letters, and commissary items including long john bottoms, two bars of soap, mayo, ink, a pickle, and chips.
  Plaintiff's allegation that defendant Green stole criminal trial exhibits might support a claim of denial of access. However, the exhibits specifically referred to are a note written by Mike Orr, which plaintiff intended to submit in his defense, and an envelope from plaintiff's mother stamped "return to sender" in the CCA mailroom, which he wanted entered in his criminal trial as proof of harassment from AUSA Morehead. It appears the exhibit of the note purportedly written by Orr was dealt with and introduced during plaintiff's criminal trial. Plaintiff does not allege that the envelope was not produced at trial, that its introduction would have been relevant, or that any actual prejudice resulted.

11

effected through random and unauthorized conduct of a prison employee, which may be redressed through adequate post-deprivation remedies are imbued with the requisite due process.  An inmate in Kansas may sue for wrongful or negligent loss of personal property in state court.  Because Mr. McKeighan has this adequate post-deprivation remedy for his losses, he does not state a federal constitutional claim of deprivation of property without due process. Smith v. Maschner, 899 F.2d 940, 943 (10th Cir. 1990).

### IV.  Security Classification and Housing

Plaintiff complains about his placements in segregation and in administrative detention.  Administrative detention implicates constitutional due process only if the confinement is "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." McDiffett v. Stotts, 902 F.Supp. 1419, 1426 (K.Kan. 1995), *quoting* Sandin v. Conner, 515 U.S. 472, 486 (1995); Speed v. Stotts, 941 F.Supp. 1051, 1055 (D.Kan. 1996), *citing* Sandin, 515 U.S. at 486.  Plaintiff has not described conditions or restrictions so atypical in type or duration as to amount to a federal constitutional violation[11].  Nor has he alleged any facts suggesting a violation of procedural due process.  In any event, an inmate's placement in segregation for ten days and in "N-pod," "M-pod," and "orentation pod" at various times involve classification decisions purely within the discretion of prison

---

[11] For instance, plaintiff alleges defendant Morehead instructed "the Marshals" to order defendants Daugherty, Roberts, and Green to place him in segregation.  This statement without more, does not suggest any unconstitutional act by defendants Daugherty, Roberts, or Green.  It does not even include facts indicating that such a direction communicated to CCA officials would be unconstitutional.

officials, and are not reviewable in federal court.  See Templeman v. Gunter, 16 F.3d 367, 371 (10th Cir. 1994).

### IV.  Other Claims

Plaintiff's claims asserted under the Fourth Amendment of unreasonable searches and seizures, and sexual discrimination by exposure before female guards do not include factual allegations as to when and how either of these alleged violations personally affected or injured plaintiff.  His figures and citations on overcrowding in his motion for preliminary injunction include insufficient personal facts, particularly since his complaint contains only the statement that defendants tried to place a third inmate in his cell.  Plaintiff's claims regarding cold temperatures are raised only in his motion and are also conclusory.

Plaintiff shall be given time to show cause why this action should not be dismissed for the reasons stated herein.  If he does not respond to this Order within the time allotted, this action may be dismissed without further notice.

### MOTION FOR PRELIMINARY INJUNCTION

Plaintiff has filed a Motion for Preliminary Injunction (Doc. 5).  Having considered the motion, the court finds it should be denied.  To obtain a preliminary injunction in federal court, the movant has the burden of establishing that:

> (1) the party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits.

Resolution Trust Corp. v. Cruce, 972 F.2d 1195, 1198 (10th Cir. 1992); Schrier v. Univ. of Colo., 427 F.3d 1253 1258 (10th Cir. 2005); Kikumura v. Hurley, 242 F.3d 950, 955 (10th Cir. 2001).  A "preliminary injunction is an extraordinary remedy" and therefore "the right to relief must be clear and unequivocal."  Id.

The court has carefully reviewed the allegations and arguments set forth in the complaint and the motion, and as discussed above, has found they fail to state a cause of action under either 42 U.S.C. § 1983 or 28 U.S.C. § 1331, and generally lack adequate factual support.  It follows that there is not a substantial likelihood of success of the merits.  The court further finds that plaintiff's claims in his motion of defendant Morehead "running a Racketeer Influenced Corrupt Organization (RICO) operating from the Robert J. Dole Courthouse"; a conspiracy[12] by several defendants, "other marshals and some judges"; and his request for an injunction "to prevent any further retaliation[13]" are completely devoid of factual support, and do not entitle him to relief.

**OTHER MOTIONS**

Plaintiff has filed a Motion for Appointment of Counsel (Doc. 3) seeking appointment of counsel named therein to represent him in this action.  He has also filed a "Motion for Court Order to Serve

---

[12] To support a claim of conspiracy, plaintiff must allege specific facts showing an agreement and concerted action among the defendants. Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998). Conclusory allegations of conspiracy are insufficient to state a valid claim under Section 1983. Id., quoting Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir. 1994).

[13] An inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights. Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998); Frazier v. DuBois, 922 F.2d 560, 562 FN1 (10th Cir. 1990). He must prove that "but for" the retaliatory motive, the incidents of which he complains would not have taken place.

14

Paper Work" (Doc. 4), in which he requests that the court order the clerk to copy all materials submitted by him in this case[14] and serve them upon defendants[15]. Having considered these motions, the court finds they should be denied because that plaintiff is not entitled to representation of counsel in this civil rights action, appears capable of alleging facts, and the action does not appear likely to survive screening. Plaintiff may renew these motions at a later time, if appropriate.

**IT IS THEREFORE ORDERED** that plaintiff is granted thirty (30) days from the date of this Order in which to show cause why this action should not be dismissed for failure to state a cause of action under either 42 U.S.C. § 1983 or 28 U.S.C. § 1331 and for failure to allege sufficient facts in support of a federal constitutional claim as discussed herein.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Leave to Proceed in forma pauperis (Doc. 2) is granted; and plaintiff's Motion to Appoint Counsel (Doc. 3), "Motion for Court Order to Serve Paper Work" (Doc. 4), and Motion for Preliminary Injunction (Doc. 5) are denied.

**IT IS SO ORDERED**.

Dated this 13th day of August, 2008, at Topeka, Kansas.

---

[14] Plaintiff mentions that he has sent "paper work" including "summons, motions, etc." to the federal courthouse in Kansas City, Kansas. He must send all materials he intends to be filed in this action to the courthouse in Topeka, Kansas.

[15] Once a civil rights action brought in forma pauperis survives screening, this court automatically orders the service of summons by U.S. Marshals.

15

<pre>
                              s/Sam A. Crow
                              U. S. Senior District Judge
</pre>