# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JAMES McKEIGHAN,

    **Plaintiff,**

  v.       CASE NO. 08-3173-SAC

CORRECTIONS CORPORATION
OF AMERICA, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

On August 13, 2008, this court entered an Order screening this civil complaint and finding that plaintiff's claims were subject to being dismissed for reasons stated therein (Doc. 7). Plaintiff was given time to show cause why this action should not be dismissed. He filed a Response (Doc. 14), and on June 9, 2009, the court entered another Order, dismissing all plaintiff's claims except those for money damages based upon two grounds: (1) plaintiff was denied recreation and time outside his cell while housed in an overcrowded cell, and (2) plaintiff was confined in segregation as punishment for attempting to defend his criminal case. The court emphasizes that these are the only two claims now before it in this case.

Summons issued on these two claims only. The matter is currently before the court upon a Motion to Dismiss (Doc. 33) filed by defendants Corrections Corporation of America (CCA), and CCA employees: George Green, Melanie Fulton, Sheldon Richardson, Robert

Mundt, Ken Daugherty, and Bruce Roberts[1]. Having considered the motion together with the several pleadings filed by plaintiff in response (Docs. 38, 39, 40, 41, and 45), the court finds as follows.

**DEFENDANT CCA**

At the outset, the court finds this complaint must be dismissed as against defendant CCA. As noted, plaintiff's remaining claims are for money damages only. Plaintiff was previously advised that since he was in federal custody at all relevant times and the CCA is a private entity, his claim against the CCA do not involve action by a person acting under color of state law. He has responded by disagreeing with the court's ruling and citing inapt cases involving state inmates. The court concludes that plaintiff has stated no cause of action against defendant CCA under 42 U.S.C. § 1983. Furthermore, plaintiff has no cause of action against the CCA under <u>Bivens</u>. <u>Correctional Services Corporation v. Malesko</u>, 534 U.S. 61 (2001). Accordingly, the court dismisses this action as against defendant CCA under Congress' directive that a district court shall dismiss, at any time, any portion of a prisoner complaint that fails to state a claim. 28 U.S.C. § 1915A(b)(1); 28 U.S.C. § 1915(e)(2)(B)(ii).

**MOTION TO DISMISS**

---

[1] The only other defendant remaining in this action is USMS Mike Shute.

2

Defendant CCA employees move to dismiss the complaint for several reasons, including that plaintiff has not exhausted his administrative remedies. The Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71 (1996), amended 42 U.S.C. § 1997e(a) to provide:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Id. In Booth v. Churner, 532 U.S. 731, 733 (2001), the Supreme Court of the United States, construing § 1997e(a), held that exhaustion of administrative remedies is "no longer left to the discretion of the district court, but is mandatory." Section "1997e(a) requires exhaustion of administrative remedies as a precondition to bringing litigation, and requires dismissal where a litigant has failed to complete such exhaustion. Fitzgerald v. Corrections Corp. of America, 403 F.3d 1134, 1140-41 (10th Cir. 2005).

The Supreme Court further held that exhaustion is required regardless of the type of relief sought or offered through those administrative procedures, Booth, 532 U.S. at 734; and "for any suit challenging prison conditions, not just for suits under § 1983." Porter v. Nussle, 534 U.S. 516, 524 (2002). The Court has also plainly held that "proper exhaustion . . . demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 90 (2006). "An inmate who begins the

grievance process but does not complete it is barred from pursuing a [federal] claim under the PLRA for failure to exhaust his administrative remedies." See Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002). A prisoner plaintiff's failure to satisfy the administrative exhaustion requirement imposed by § 1997e(a) is an affirmative defense that must be raised and proven by defendants. Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007)("[T]he burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant."). To sustain their burden, movants must prove "administrative remedies were, in fact, available" to plaintiff and that he "failed to exhaust these remedies". Purkey v. CCA Detention Center, 263 Fed.Appx. 723, 726 (10th Cir. 2008).

Defendant's motion and plaintiff's responses have required the court to consider exhibits on the dispositive issue of exhaustion. Accordingly, the court will analyze the motion as one for summary judgment. The parties are notified that the court is treating defendants' Motion to Dismiss for failure to exhaust administrative remedies as one for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure[2]. Fitzgerald, 403 F.3d at 1140. Plaintiff is given time to properly respond to

---

[2]      Rule 12(d) provides:

Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Id.

the motion as one for summary judgment, limited to the narrow issue
of exhaustion and the prisoner's efforts to exhaust. <u>Id</u>.


## SUMMARY JUDGMENT STANDARDS

Under Fed.R.Civ.P. Rule 56, the resolution of the
exhaustion issue in favor of defendants is appropriate if it is
demonstrated that there is "no genuine issue as to any material
fact" over the question. <u>Id</u>. Under summary judgment practice, the
moving party bears the initial responsibility of presenting the
basis for its motion and identifying those portions of the record
that it believes demonstrate the absence of a genuine issue of
material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).
Once the moving party has met its burden with a properly supported
motion, the burden then shifts to the opposing party to present
specific facts showing there is a genuine issue for trial.
Fed.R.Civ.P. 56(e); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242,
248 (1986); <u>Whitesel v. Sengenberger</u>, 222 F.3d 861, 867 (10th Cir.
2000)("If the movant carries this initial burden, the burden shifts
to the nonmovant 'to go beyond the pleadings and set forth specific
facts, identified by reference to affidavits, deposition
transcripts, or specific exhibits incorporated therein,' from which
a rational trier of fact could find for the nonmovant.")(citing
<u>Mitchell v. City of Moore, Ok.</u>, 218 F.3d 1190, 1197 (10th Cir.
2000)). Where the opposing party bears the burden of proof on the
issue in dispute, conclusory allegations, unsupported by factual
material, are insufficient to defeat the motion. Instead, the

opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. <u>Anderson</u>, 477 U.S. at 249, 256 ("A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. <u>Id</u>. Rule 56 thus serves to screen cases lacking any genuine dispute over an issue that affects the outcome of the case. In determining this motion, the record is considered in the light most favorable to the nonmoving party. <u>Bee v. Greaves</u>, 744 F.2d 1387, 1389 (10th Cir. 1984), <u>cert</u>. <u>denied</u>, 469 U.S. 1214 (1985).

## DID ADMINISTRATIVE REMEDIES EXIST AT THE LDC?

In arguing that plaintiff has failed to exhaust, movants imply, rather than plainly allege, that administrative remedies existed at the CCA Leavenworth Detention Facility (LDC) during plaintiff's confinement there. In their Memorandum in Support, movants do not describe the steps in the administrative process at the LDC. Nor do they provide the affidavit of an official custodian of the facility's administrative grievance records attesting that plaintiff has not exhausted, as is often done by state and federal prison authorities. Movants do provide exhibit "O", which is a copy of the first page of the CCA's

"Inmate/Resident Grievance Procedures" at the LDC[3]. However, exhibit "O" does not set forth in detail the steps required of a detainee at the LDC to exhaust CCA's administrative grievance process. Exhibit "O" is only two pages. The first is the initial page of the CCA's policy statement, which indicates that the policy contains another 11 pages. Apparently, the other pages were not deemed relevant. The second page of exhibit "O" does not appear to be one of the other 11 pages, since the numbering of the paragraphs is completely different and there is nothing identifying the second page as part of the CCA policy statement.

Page one of exhibit "O" states it is CCA policy to provide a means for inmates to address complaints regarding facility conditions, treatment, and policies[4]. The process is generally described as follows:

> All inmates . . . will have access to an informal resolution process to resolve their complaints. At any time the informal resolution process has not provided successful resolution of the complaint . . . inmates . . . may use the formal grievance process.

Id. at 1. The second page of exhibit "O" provides more specific information under the heading "Time Guidelines":

> The total time for the informal resolution process will be no more than fifteen (15) calendar days from the date the 14-5A was submitted through the date the response was presented to the inmate . .

---

[3] Movants incorrectly call this document Exhibit "N" in their only reference to it in Defendants' Memorandum in Support of Motion to Dismiss (Doc. 34)(hereinafter DEFSMEM) at 23. The court wonders why the Inmate Handbook information on the grievance process, mentioned by plaintiff, was not also provided.

[4] The effective dates of this policy on this exhibit are ambiguous.

. .

   a. the inmate . . . must submit the 14-5A
within seven (7) calendar days of the alleged
incident.

   b. The time for filing begins from the date
the problem or incident became known to the inmate
. . . .

   c. In the event the inmate . . . is not
satisfied with the response, the inmate . . . will
have five (5) calendar days to submit a formal
grievance to the Grievance Officer.

<u>Id</u>.

   Other exhibits, provided by both parties for other
purposes, show form 14-5A is entitled "INFORMAL RESOLUTION"
(hereinafter sometimes referred to as IR). <u>See</u> <u>e.g.</u>, DEFSMEM, Exh.
M. The parties also exhibit a form 14-5B, which is entitled
"INMATE/RESIDENT GRIEVANCE" (hereinafter Grievance). <u>See</u> <u>e.g.</u>, <u>id</u>.
Exh. L. The Informal Resolution, or 14-5A, is a two-page form with
space on the first for the inmate's statement of his problem and a
suggested solution. Other spaces are provided to indicate those
staff members involved in the attempted resolution, dates the
informal resolution was received and a response is due, information
gathered from meetings regarding the issue, and a Staff Response.
Finally, a space is provided for the inmate to sign if he is
satisfied with the suggested remedy. Directions on the form
provide:

   "If the inmate/resident is not satisfied with the
   remedy suggested above, the inmate/resident is not
   required to sign below and may choose to file a
   formal grievance with the Facility Grievance
   Officer. In either case, the inmate/resident will
   receive a copy of this form on the day the final

resolution process is completed.

The Grievance, or form 14-5B, is also a two-page form with separate spaces on the first page for the inmate to state his grievance and "Requested Action." The second page provides additional spaces for the "responding staff member's" report and decision. Separate spaces are also provided for "Inmate/Resident Appeal" and "Warden/Adminstrator's Decision."

In response to the Motion to Dismiss, plaintiff refers to and quotes movant's exhibit "O" as CCA's grievance policy. However, he also claims, "[t]his is not what happens." Plaintiff's Memorandum in Support of Response to Defendants' Motion to Dismiss (Doc. 39)(hereinafter Response) at 10. He alleges that CCA employees instead tell inmates "they must first fill out a request form[5], then an informal resolution, then a grievance." Plaintiff's statement is supported by the fact that both parties have also submitted exhibits entitled "Prisoner Information Request" and designated as Form #SEC112-P (hereinafter sometimes referred to as Request). See e.g., DEFSMEM, Exh. F. This form provides a space for "subject" and one for "response". Directions on the form are: "If response is unsatisfactory, check below and resubmit the form for review by the facility administrator." A final space is

---

[5]     This "Request" step, revealed only by plaintiff, is not included in this court's finding of the administrative remedies required at the LDC. This is because it does not appear in defendants' motion, the CCA's written policy as provided herein, or the instructions on their forms. Plaintiff has not alleged or shown that he was prevented from exhausting remedies on the only two claims herein because his pertinent IR or Grievance was rejected for not having first submitted a form "Request".

provided for the Warden's response[6].

From the foregoing the court finds, based on the record before it, that the steps required in the administrative remedies procedure applicable to plaintiff at the LDC included: (1) an attempt at informal resolution (IR) through submission of a form 14-5A to a staff member within 7 days of the incident; (2) the submission of a formal Grievance on form 14-5B to the Facility Grievance Officer within 5 days; and (3) an appeal to Warden submitted by the inmate completing the proper spaces on the same 14-5B form already submitted as the formal Grievance and returned upon its resolution. The time limit for submitting an appeal to the Warden is not indicated. Nor is there any provision that after a specific time has elapsed with no response, the inmate may proceed to the next step in the process.

This court is often rightfully required to parse and substantially liberally construe a pro se inmate's pleadings. The movants herein are not pro se litigants. The court has had to parse the filings of both parties in order to eke out basic parameters of the administrative grievance process in existence at the LDC. It could have much more simply found that movants failed to establish the existence of an administrative remedy process and denied their motion to dismiss on the threshold issue of exhaustion. However, plaintiff has forthrightly admitted rather

_____

[6]     It is difficult to discern how this appeal to the Warden is different from, or necessary in addition to, the appeal to the Warden provided on the Grievance 14-5B form.

than denied that a grievance policy existed at the LDC[7]. Moreover, the exhibits submitted by both parties of Requests, IRs and Grievances plainly demonstrate that Mr. McKeighan managed to pursue administrative remedies numerous times on numerous claims while confined at the LDC[8].

## WERE ADMINISTRATIVE REMEDIES AVAILABLE TO PLAINTIFF?

The court's inquiry does not end with its finding that administrative remedies existed at the LDC. Instead, movants must also show that the grievance process was actually available to plaintiff.

Throughout this action, plaintiff has repeatedly claimed "obstruction" of the CCA's grievance process. However, he provides insufficient facts as to an impediment that actually affected his exhaustion efforts on each remaining claim. See Fields v. Oklahoma State Penitentiary, 511 F.3d 1109, 1112 (10th Cir. 2007). For example, he alleges that "request forms" disappeared or were not returned for two weeks, IRs disappeared and then were resolved as "out of time", and case managers took Grievances out of "the grievance procedure lock box" and told inmates they were never received. Plaintiff has previously been advised that conclusory

---

[7] Mr. McKeighan alleged that he used the inmate grievance procedure at the LDC by filing Request forms, Informal Resolutions, Grievances, and appeals of Grievances to the Warden. Complaint (Doc. 1) at 13.

[8] These factual circumstances distinguish this case, and may not exist in another case to bolster CCA's minimal assertion of the existence and availability of an inmate grievance procedure at the LDC. The court emphasizes that its findings with respect to grievance procedures at the LDC are limited to the facts of this case.

allegations are insufficient.  While this court readily agrees that
administrative remedies are not "available" and exhaustion may be
excused when prison officials have refused to provide prisoners
with requisite forms, plaintiff's allegations that CCA employees at
times did not provide forms are nothing more than bald statements.
Likewise, his general statements that he and other segregation
inmates submitted several IRs and Grievances on numerous matters
and that Grievances were mishandled daily are conclusory.  His
claims that movants' attorney lied and that movants forged
documents to the court are not supported by any convincing facts or
evidence and are spurious.  Plaintiff fails to name a particular
CCA employee and describe circumstances, including dates, showing
that person was involved in the actual obstruction or impediment of
a specific Request, IR, or Grievance submitted by him, which
properly presented either of the two claims remaining in this
case[9].  Here also looms the noted demonstration of plaintiff having
presented numerous Requests, IRs and Grievances at the LDC.  The
court finds that plaintiff's statements that the administrative
grievance procedure was obstructed by defendants to the extent that
he was prevented from exhausting the claims in this case and his
failure to exhaust should be excused are simply not supported by

---

[9]     The record in this case reveals that Mr. McKeighan's pleadings as
well as his administrative remedy attempts are mired with numerous allegations
that are either conclusory or not relevant to the claim or claims at issue.  He
stated in a response that he does not understand why he must keep repeating his
allegations.  Not only is he not required to repeat allegations relevant only to
dismissed claims, it is improper. He is directed to limit future allegations and
exhibits submitted in this case to those that are relevant to the two claims now
before the court.

sufficient factual allegations.

The court concludes that defendants have met their burden of showing that an administrative grievance procedure was in existence at the LDC and was available to Mr. McKeighan during the relevant times. It follows that plaintiff was required by 42 U.S.C. § 1997e(a) to complete the inmate grievance process at the LDC prior to filing his complaint in federal court. For reasons that follow, the court finds that movants have also met their initial burden of showing that Mr. McKeighan did not fully and properly exhaust every available administrative remedy before resorting to federal court action.


## CLAIM OF DENIAL OF RECREATION

In the complaint, plaintiff complained of being placed in segregation on March 28, 2007, in a cell by himself for 10 days and denied recreation.[10] He also complained of being taken to segregation again on October 30, 2007, and stated that January 3, 2008, was the first time "we received recreation since the beginning of November." In addition, he alleged that on May 7, 2008, he was placed on a 15-day no-recreation restriction. He then stated: "Lt. Green said the reason was CCA was under staffed for the winter months." Complaint (Doc. 1) at 13. In his response to the court's initial screening order, plaintiff alleged that

---

[10] Exhibits submitted by defendants indicate LDC policy is that inmates in segregation are to receive one hour of recreation per day five days per week "as scheduled by staff" but that inmates on pre-hearing detention will not receive outside recreation for the first 72 hours, and that outside recreation is "weather permitting." DEFSMEM, Exh. A at 4.

defendants denied him any type of recreation "for multiple weeks at a time" and "sometimes" for over 45 days.[11]

Defendant CCA employees contend that plaintiff failed to exhaust administrative remedies on this claim. In support, they allege he essentially filed nothing in a timely fashion on the no-recreation restriction. They provide an exhibit showing he filed a "Request" listing this claim among a number of other conditions complaints. DEFSMEM, Exh. N. They argue that this Request was submitted "well outside" the time limit of no more than seven (7) days from the date the problem became known. They also argue that the reasons alleged by plaintiff as having been given to him for the restrictions served the legitimate penological purpose of security. In addition, movants argue that plaintiff does not allege sufficient facts to state a claim of cruel and unusual punishment based on overcrowding.[12]

Movants' Exhibit N is Mr. McKeighan's "Prisoner Information Request" signed by him on March 1, 2008, and is relevant to this claim. In this Request, plaintiff complained that he was forced to live in a cell with two other inmates, and was locked down 24 hours per day "with little or no recreation." He specified that he received recreation 3 times in November 2007, none in December

---

[11]    This court previously found that plaintiff's other myriad claims of cruel and unusual punishment were not supported by sufficient facts, including dates and duration, and dismissed those claims.

[12]    Plaintiff's allegations regarding cell size do not include any facts suggesting danger or harm, and his citation to some standards for cell size do not establish cruel and unusual punishment. His allegation that he was confined in an overcrowded cell is considered only insofar as it might support his claim of denial of exercise.

2007, 3 times in January 2008, and 6 times in February. He generally claimed this violated state and federal laws, and that he was entitled to recreation every week. Thus, it appears that Mr. McKeighan began the administrative process on this claim, at least with respect to the time period beginning in November 2007 through February 2008.[13]

The official's undated response was not a denial as untimely, but: "I will look into your complaints". As noted, the Request form instructed that if the response was unsatisfactory, the inmate was to "check below and resubmit this form for review by the facility administrator." Id. There is no check or other indication that Mr. McKeighan resubmitted this form to the Warden. See also Response, Exh. 3. More importantly, the record contains no evidence that he submitted an Informal Resolution, a Formal Grievance, and an appeal of the denial of a Grievance to the Warden on this particular claim. The court finds defendants have thus provided evidence that Mr. McKeighan did not exhaust all available administrative remedies on his claim of denial of recreation.

Plaintiff submits exhibits, which he argues controvert movants' contention that he failed to exhaust this claim. However, they only confirm that he failed to file any remedy on this claim beyond his initial Request of March 1, 2008. Mr. McKeighan's Exhibit 3, attached to his Response, is his apparently hand-

---

[13] Plaintiff's claims in this administrative Request did not include the recreation restrictions in March 2007 or May 2008 alleged in plaintiff's pleadings.

written, personal "copy" of his March 1, 2008 Request.[14]  With this Request, he exhibits a Grievance (Response, Exh. 4) on which he wrote "Request Form sent 3-1-08 and Informal Resolution sent 3-19-08".  However, in this Grievance plaintiff complained only about a third person in his cell making it overcrowded and a property loss.  No mention is made of denial of recreation.  He even made the contrary statement that inmates in the CCA segregation unit "are receiving recreation."  Plaintiff has not provided a copy of an IR that challenged any restrictions on recreation[15].  The record now before the court thus indicates that plaintiff did not fully and properly exhaust administrative remedies on the claims in his complaint that the Eighth Amendment was violated by defendants' denial of recreation.


## CLAIM OF PUNITIVE SEGREGATION

With respect to plaintiff's claim that he was placed in segregation as punishment for going to trial in his criminal case, he alleged in his court pleadings as follows.  On March 28, 2007, the prosecutor in his criminal case "instructed the Marshals to order CCA employees" to place him into segregation, and he was put

---

[14]  Movants' copy of this Request has no grievance process number written on it.  Plaintiff's copy, on the other hand, has "Appeal #08-003-07" written on it.  This same number is written on several other exhibits submitted by both parties.  All other documents submitted by the parties having #08-003-07 written on them primarily involved plaintiff's claims of denial of phone access, and none contains even a mention of a no-recreation restriction.

[15]  Plaintiff alleges in his Response that he submitted an IR that was lost or destroyed.  In his Complaint, he stated that on March 20, 2008, his IR "on the telephone issue" disappeared.  However, even if plaintiff's statements were true that he submitted an IR that contained the no-recreation claim and it disappeared, the fact remains that his Grievance did not include this claim.

in a cell by himself for 10 days.  On April 8, 2007, he was "thrown back into segregation" by Assistant Warden Mundt for complaining about the acts of employees.  Complaint (Doc. 1) at 9.  On January 11, 2008, the prosecutor lied that McKeighan "was threatening her over the phone" and said that was "why she kept throwing (him) into segregation."  Id. at 10.  He further claimed as follows:

> The plaintiff was repeatedly placed into solitary confinement for sending and filing his own motions with the court and for fighting the criminal charges.  During this time frame . . . plaintiff broke none of CCA's rules or regulations and never received a hearing once in solitary confinement. CCA officials told the plaintiff, "We got a call from the Marshals and your (sic) under investigation again."  In reality this was punishment for fighting the case.

Response to Order (Doc. 14) at 4.

Movants allege in their Motion to Dismiss that plaintiff filed no IR and no Grievance that actually challenged his placement and retention in segregation.  They note that he filed remedies generally complaining about conditions and segregation, but failed to claim that placement or retention in segregation was punishment for going to trial or to state facts to that effect.  They assert that, as a result, plaintiff has not exhausted administrative remedies on this claim.  They additionally argue that use of administrative segregation in prison is "the sort of confinement that inmates should reasonably anticipate", and there were legitimate disciplinary and security reasons for plaintiff's placement and retention in segregation while at the CCA.

Exhibits submitted by movants include one Request (DEFSMEM,

Exh. F) filed by Mr. McKeighan that contained factual statements

regarding his placement in segregation.[16]  In this Request dated

March 15, 2008, plaintiff stated:

> CCA employees have been punishing me for
> expressing my constitutional birthright to go to
> trial.  I was first placed into segregation around
> August 8 of 2006 for using someone else's pin # on
> the telephone.

Id.  He also enumerated that on March 28, 2007, he was "placed into

segregation because the prosecutor and CCA Chief said I threatened

the prosecutor over the telephone"; on September 18, 2007, he was

written-up and "placed into segregation under investigation"; and

on October 30, 2007, he was "placed into segregation because the

prosecutor said I threatened her over the telephone again".  He

additionally stated that around July 2007, a CCA employee told him

he "was placed in N-pod (orientation) and the segregation units

because (he) called the prosecutor names over the telephone."

Plaintiff wrote in the "Request" space on the form: "All I did was

call the prosecutor names over the telephone", and asserted he had

a right to do so under the First Amendment[17].  He finally stated:

> The date the prosecutor told CCA to throw me into
> segregation was shortly after I sent an excellent
> motion to the judge about the illegal conduct of
> the prosecutor.  The prosecutor, Marshals, and CCA

---

[16]     Movants' exhibits also show that Mr. McKeighan submitted an IR (Id.
Exh. M) in February 2008 and a Grievance in March 2008 (Id. Exh. L) concerning
restrictions on his phone usage.  These are both numbered proceeding #08-003-007.
Neither is relevant to plaintiff's claim of punitive segregation.  They do
demonstrate that plaintiff was able to complete the administrative process on his
challenge to phone restrictions.

[17]     On his March 15, 2008 Request Mr. McKeighan wrote "Re: telephone
grievance", referenced a prior grievance regarding telephone restrictions, and
stated he had "verbally requested a copy of the grievance" be placed in "Green's
work performance file".

employees have punished me for going to trial.

Id.[18]  It again appears that plaintiff began the administrative process on this claim[19].  However, it also appears that he did not complete the process by submitting an IR, a Grievance, and an appeal raising the claim that he was placed and held in segregation solely as punishment for going to trial and filing motions in his criminal case.

Plaintiff has not himself submitted copies of an IR, Grievance, and an appeal in which he raised his punitive segregation claim.  He instead refers this court to exhibits in his criminal case.  It is plaintiff's, not the court's, responsibility to gather and present his evidence.  He was remiss in not retaining copies or obtaining copies of these documents from either the clerk's office or his defense counsel, and filing those with the court.  Nevertheless, this court has located and takes judicial notice of the "Memorandum in Support of Motion for Release from Solitary Confinement" filed pro se by Mr. McKeighan in his criminal case and the attached exhibits.  See McKeighan (Doc. 252).  The court has not, however, perused the entire criminal case file as Mr. McKeighan seems to suggest.

_____

[18]    The court takes judicial notice of the record in plaintiff's criminal case that is defendant's "correspondence" to the trial court entitled "Prosecutorial Misconduct". United States v. McKeighan, Case No. 06-cr-20066-JWL (hereinafter McKeighan)(Doc. 62-2).  This document was received by that court on January 24, 2007.  On February 7, 2007, the judge directed plaintiff to proceed with such matters through counsel.  Id. (Doc. 62).  None of the placements in segregation listed in plaintiff's March 15, 2008 Request was in January or February 2007.  Thus, plaintiff's claim of close proximity is not supported.

[19]    Movants also claim that this Request was not timely, apparently because the complained-of placements occurred more than 7 days prior to plaintiff's submission of this Request.

19

One of the judicially-noticed exhibits is an Informal Resolution signed by plaintiff on November 8, 2007.[20] Id. (Doc. 252-2&3). In this IR, McKeighan primarily complained that legal documents and other personal property were stolen from him on October 30, 2007, and about clothing and laundry issues. He generally stated at the end of the IR that CCA employees were punishing him for going to trial and saying they were following "the Marshal's orders." This IR preceded, rather than followed, his March 15, 2008 Request, and so was not a step in the exhaustion of that Request. In any event, this IR contained no claim or underlying facts that McKeighan was placed in segregation solely as punishment for going to trial or filing motions. Furthermore, no formal Grievance or appeal to the Warden connected to this IR is exhibited.

Another attachment to the motion in plaintiff's criminal case is a Grievance he signed on April 23, 2007 (Doc. 252-4). In this Grievance, Mr. McKeighan mainly claimed that his legal papers were thrown out. His "requested action" was "stop resisting my access to the courts/law library and "no CCA employee has the right" to throw out or damage anyone's legal papers. As usual, Mr. McKeighan inserted other complaints not related to his actual request for relief including: "On Wednesday 3-28-07 I went to segregation for no reason on my part . . . and was stuck in the hole for nine (9) days . . . ." The grievance officer responded

---

[20]     This 2007 IR is obviously not the one missing from March 2008.

that his legal papers had been returned. The officer added, "There has been no retaliation against this inmate. Inmate was placed in segregation per order (sic) the USMS." The Warden agreed with the grievance officer's response, and reiterated that McKeighan's legal materials had been returned and his complaint was without merit.

This Grievance also preceded plaintiff's March 15, 2008 Request, and was therefore not the Grievance necessary for exhaustion of his subsequent Request. Moreover, this Grievance only addressed McKeighan's placement in segregation on March 28, 2007 for 9 days and his claim that it was "for no reason on my part." It did not include claims that plaintiff was placed and held in segregation any other time or placed there as punishment for going to trial[21]. Moreover, the placement challenged in this Grievance is one of two that the parties agree were at the direction of the USMS.[22]

The court finds that neither of the exhibits from plaintiff's criminal case proves he filed an IR, then a Grievance,

_____

[21]     In finding that exhaustion of administrative remedies is mandatory, the Supreme Court reasoned:

Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.

Porter, 534 U.S. at 524-25.  It follows that a prisoner's administrative remedy must have included a statement of the claim asserted in his federal complaint that was sufficient to have allowed prison officials to try to address those claims internally.  Porter, 534 U.S. at 525 ("[A]llowing prisoners to bypass administrative procedural rules with impunity would subvert Congress's desire to 'afford[ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case'.").

[22]     If plaintiff is claiming that movant CCA employees violated his constitutional rights by following the directive of the USMS, he utterly failed to present such a claim in any of his administrative remedies.

and then an appeal to the Warden on the claims in his complaint that he was placed and held in segregation as punishment for going to trial or for filing motions in his criminal case. It is clear from the content of plaintiff's exhibited administrative remedies that none, other than his March 15, 2008 Request, contained claims sufficiently relating to the allegations of wrongdoing in the Complaint to support his assertion of having exhausted. The parties' exhibits of remedy attempts on any other claims are simply not relevant.[23] In sum, the record before the court does not include an IR, then a Grievance, and then an appeal to the Warden, in which Mr. McKeighan claimed he had been placed and held in segregation solely as punishment for going to trial or filing motions and actually alleged facts to support this claim.[24] The court concludes that movants have established that Mr. McKeighan

_____

[23]     Plaintiff's Exhibit 10, "Disciplinary Appeal" submitted May 8, 2008, in which he questioned how the CCA was going to provide him recreation during a 15-day cell restriction, was neither an IR nor a Grievance, and does not show exhaustion of administrative remedies through proper procedures.
         Rather than simply filing exhibits showing exhaustion, which plaintiff has claimed he has, he attacks several of defendants' exhibits. However, most of the exhibits attacked, like exhibit L, which plaintiff argues for three pages is a forgery, are simply not relevant to the claims remaining in this case.

[24]     Plaintiff has referred this court to a motion with exhibits filed in his criminal case on January 16, 2008: "Defendant's (pro se) Motion for Release from Solitary Confinement". McKeighan (Doc. 251). This court takes judicial notice of this motion as well as the order denying it. The motion was heard on January 28, 2008. The judge found the "Government acknowledges" the restrictions, but states they "were imposed as the result of an investigation by the U.S. Marshal's office into allegations of witness tampering and obstruction of justice." Id. (Doc. 279) at 1 (March 7, 2008). Judge Lungstrum noted the Government's "legitimate interest in protecting Government witnesses and trial participants." Id. at 2. He reasoned that he "need not resolve" whether "the investigation by the Marshal's office was or is proper or justified"; but denied the motion "because the Government has identified a proper penological purpose in the restrictions placed on Defendant." Id. at 3. Given this result and the record showing disciplinary proceedings against plaintiff, it appears his conclusory statements that he was innocent of any misconduct at the LDC and during his criminal proceedings are self-serving, at best.

did not exhaust all available remedies on this claim before filing this action in federal court.

Because the court finds that this complaint is subject to being dismissed due to plaintiff's failure to fully and properly exhaust administrative remedies on his claims prior to filing this complaint, the other grounds in defendants' motion need not be addressed.

The court notes that plaintiff has improperly continued, in his responses to this Motion to Dismiss, to discuss claims and defendants that were previously dismissed from this action. The court will not repeat the reasons for its dismissal of those claims and defendants, as they are fully set out in its prior orders. The facts alleged and arguments made with regard to these dismissed matters are not responsive and provide no factual or legal basis for this court to deny the instant motion.

In sum, movants' exhibits together with plaintiff's own exhibits clearly show that Mr. McKeighan was able to and did file numerous Requests, IRs, formal Grievances, and appeals at the LDC during the relevant time frames. However, they also show that he failed to properly submit and fully pursue administrative remedies on either of his two remaining claims in this case. Unless plaintiff can offer convincing relevant facts or evidence, not already submitted, showing he did fully and properly exhaust these precise claims, or alternatively, that he was prevented from exhausting these two claims, the Motion for Summary Judgment will be sustained. Fitzgerald, 403 F.3d at 1134, 1140.

Plaintiff is given time to respond to the Motion of defendant CCA employees for Summary Judgment, limited to the issue of exhaustion. The court finds that defendant CCA employees have presented the basis for their summary judgment motion and identified portions of the record that they believe demonstrate the absence of a genuine issue of material fact. However, they too may submit additional materials in support of their motion within the same time frame as plaintiff, if they so desire. If movants do submit additional materials in support of their motion, plaintiff will subsequently be given an appropriate amount of time to respond to those additional materials.

**IT IS THEREFORE ORDERED** that defendants' Motion to Dismiss (Doc. 33) is hereby treated as a Motion for Summary Judgment.

**IT IS FURTHER ORDERED** that plaintiff is granted thirty (30) days in which to properly respond to defendant CCA employees' Motion for Summary Judgment. If plaintiff fails to properly respond within this time limit, the Motion for Summary Judgment will be sustained, and this action will be dismissed as against movants, without prejudice, for failure to exhaust.

**IT IS FURTHER ORDERED** that this action is dismissed and all relief is denied as against defendant Corrections Corporation of America.

**IT IS FURTHER ORDERED** that plaintiff's Second Motion for Extension of Time (Doc. 37) is denied as moot.

**IT IS SO ORDERED.**

Dated this 4th day of February, 2010, at Topeka, Kansas.



s/Sam A. Crow
U. S. Senior District Judge