# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS


JAMES McKEIGHAN,

                    Plaintiff,

          v.                         CASE NO. 08-3173-SAC

CORRECTIONS CORPORATION
OF AMERICA, et al.,

                    Defendants.

## MEMORANDUM AND ORDER

          Upon screening this civil rights complaint, the court
entered an Order dismissing all plaintiff's claims except: (1)
plaintiff was subjected to cruel and unusual punishment when he was
denied outside recreation while housed in an overcrowded cell, and
(2) plaintiff's First Amendment and court access rights were
violated when he was confined in segregation as punishment for
attempting to defend his criminal case. See McKeighan v. CCA, et
al., 2009 WL 1631593 (D.Kan. June 9, 2008)(Doc. 15). Summons
issued only upon these two claims. Defendants Corrections
Corporation of America (CCA) and individual CCA employees George
Green, Melanie Fulton, Sheldon Richardson, Robert Mundt, Ken
Daugherty, Bruce Roberts and Fredrick Lawrence[1] filed a Motion to
Dismiss (Doc. 33). On February 4, 2010, the court entered a
Memorandum and Order treating the motion as one for summary

---

[1] The only other defendant in this action is former Assistant Deputy
U.S. Marshal (DUSM) Mike Shute. Plaintiff states that he sues defendants in
their official and individual capacities.

judgment, giving plaintiff notice and time to respond, and dismissing defendant CCA from this action. See McKeighan, 2010 WL 446503 (D.Kan. Feb. 4, 2010)(Doc. 47)(hereinafter FEBMO). The matter is now before the court for determination of defendant CCA employees' Motion For Summary Judgment (Doc. 33); defendant Mike Shute's Motion to Dismiss or, Alternatively, Motion for Summary Judgment (Doc. 48); plaintiff's Responses to these motions (Docs. 50, 51, 55, 57 Exhibit A); defendant CCA employees' Reply to Responses (Doc. 53); defendant Shute's Reply to Responses (Doc. 56); and plaintiff's Surreply (Doc. 60). Having considered these pleadings together with all materials in the file, the court makes the following findings and Order.

## I. GROUNDS RAISED IN DISPOSTIVE MOTIONS

Defendant CCA employees' Motion for Summary Judgment is based upon several grounds, including that plaintiff did not exhaust administrative remedies. In its FEBMO, the court limited plaintiff's response to this motion to the threshold issue of exhaustion. Defendant Mike Shute's Motion for Summary Judgment (Doc.48) is based upon failure to exhaust, as well as qualified immunity and failure to state a claim.

## II. SUMMARY JUDGMENT STANDARDS

The court already found in its FEBMO that the defendant CCA employees moving for summary judgment met their burden with a

properly supported motion, and that the burden shifted to plaintiff to present specific facts as to the threshold issue of exhaustion. See Fed.R.Civ.P. 56(e);[2] Celotex Corp. v. Catrett, 477 U.S. 317, 323-325 (1986)("[T]he burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case."); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party "may not rest upon mere allegation" in his pleadings to meet this burden. Anderson, 477 U.S. at 249, 256. Rather, as Mr. McKeighan was informed, the nonmoving party must "go beyond the pleadings" and by affidavits or other discovery "designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (internal quotations omitted); Whitesel v. Sengenberger, 222 F.3d 861, 867 (10th Cir. 2000)("[T]he burden shifts to the nonmovant 'to go beyond the pleadings and set forth specific facts, identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein,' from which a rational trier of fact could find for the nonmovant.")(citing Mitchell v. City of Moore, Ok., 218 F.3d 1190, 1197 (10th Cir. 2000)). Plaintiff was further informed that conclusory allegations, unsupported by factual material, are insufficient, and that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly

---

[2]    Rule 56(e)(2) pertinently provides: When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial.

supported motion.  <u>Id</u>.   In determining a motion for summary judgment, the district court is to:

> view the evidence and reasonable inferences
> therefrom in the light most favorable to the
> nonmoving party, and . . . grant summary judgment
> only where "the pleadings, depositions, answers to
> interrogatories, and admissions on file, together
> with the affidavits, if any, show that there is no
> genuine issue as to any material fact and that the
> moving party is entitled to judgment as a matter
> of law."

<u>Roberts v. Barreras</u>, 484 F.3d 1236, 1239 (10th Cir. 2007); <u>Celotex</u>, 477 U.S. at 322-23.

The proof submitted by plaintiff in opposition to defendants' summary judgment motions consists of exhibits, his own affidavit, and the declarations of three other inmates.  Plaintiff and his declarants are currently confined at the United States Penitentiary, Leavenworth, Kansas (USPL).  All three declarants state that they were unable to obtain sworn affidavits.  Defendant Shute does not object to these declarations being treated as affidavits, and the court considers them as such.  Fed.R.Civ.P. 56(e)(1) pertinently provides:

> A supporting or opposing affidavit must be made on
> personal knowledge, set out facts that would be
> admissible in evidence, and show that the affiant
> is competent to testify on the matters stated.  If
> a paper or part of a paper is referred to in an
> affidavit, a sworn or certified copy must be
> attached to or served with the affidavit.

<u>Id</u>.


## III.  FACTS

The court finds the following relevant facts, which are

either uncontroverted or, if controverted, construed in the light most favorable to the nonmoving party. Irrelevant factual allegations, vague or conclusory allegations, self-contradictory statements, and other general statements not supported by the record are not uncontroverted. Mr. McKeighan was arrested on federal firearms and narcotics charges and was held at the Leavenworth Detention Center, Leavenworth, Kansas (LDC)[3] as a federal pre-trial detainee beginning on April 24, 2006. He was tried by a jury in federal court in Kansas City, Kansas, beginning on December 12, 2007, and was found guilty on December 19, 2007, of four counts involving possession of drugs with intent to distribute and illegal possession of firearms. His motion for new trial was denied. Id. (Doc. 323). He remained at the LDC and was sentenced on July 24, 2008, to 293 months in prison with 96 months supervised release. On August 14, 2008, he was transferred to the USPL. Mr. McKeighan complains of events that he alleges occurred during his detention at the LDC. He was in federal custody at all relevant times. Due to plaintiff's transfer from the LDC, his remaining claims are for money damages only.

The court has taken judicial notice of the records in plaintiff's criminal case, USA v. McKeighan, Case No. 06-20066-JWL. Plaintiff has frequently referred to filings, proceedings, court rulings, and alleged acts of participants in his criminal case. However, he has rarely supported his remarks about those

---

[3]    The LDC is privately owned and operated by the CCA.

5

proceedings with copies of documents from the case or even precise references to documents. The record in plaintiff's criminal case indicates the following. At the time of McKeighan's prosecution in federal court, the prosecutor filed pleadings indicating her belief that Mr. McKeighan, facilitated by his use of the telephone at the LDC, was engaged in ongoing criminal activity involving possible money laundering, fabrication of a witness statement, an attempt to arrange destruction of his computer hard-drive, threats or harassment of the prosecutor and other trial participants, and contact with a government witness. Id. (Docs. 29, 312, 319). McKeighan became dissatisfied with his first retained counsel, leading to counsel's withdrawal in June 2006. Private counsel from Texas and local counsel entered appearances on his behalf. The prosecution notified the court that the $25,000 retainer fees paid in cash to these attorneys by a third party, who obtained no receipt, might be evidence of continuing criminal activity involving Mr. McKeighan and give rise to a conflict of interest. See e.g. id. (Docs. 111, 227).[4] The funds were paid into the court at the suggestion of Texas counsel, who then withdrew in September 2006. Id. (Docs. 315, 320, 323). Plaintiff's girlfriend and co-defendant (LB) who had received the retainer funds from a person named David or Charlie and delivered them to private counsel was indicted for money laundering and pled guilty to Misprison of a

---

[4]    Mr. McKeighan, like his co-defendant, was charged with money laundering in connection with these large cash payments. However, this Count 5 against him was dismissed for lack of evidence upon defendant's motion at the close of the Government's evidence. Id. (Doc. 319).

Felony. Id. (Docs. 215, 309). A hand-written note from another of plaintiff's friend's, Mr. Orr, was introduced at trial, and LB gave testimony indicating it was dictated to Mr. Orr over the telephone by McKeighan from the LDC.[5] See id. (Docs. 201, 250, 257). Mr. McKeighan's telephone usage was restricted and he was investigated during his criminal proceedings on suspicion that from the LDC he had telephoned, harassed, or threatened the prosecutor and other trial participants or caused others to do so. Id (Docs. 250, 257, 297).

The first counsel appointed to represent Mr. McKeighan was terminated in April 2007. McKeighan wrote to the trial judge complaining that the prosecutor had harassed his retained counsel, that his series of three appointed counsel were ineffective, and that his defense was being impeded. See e.g., id. (Docs. 52, 62, 80, 111, 150, 156). Mr. McKeighan filed numerous pro se motions in his criminal proceedings, despite being represented by counsel, which were generally denied without prejudice to refiling by counsel. Plaintiff filed motions in his criminal case complaining

_____

[5] LB testified at trial that McKeighan called her on her cell phone, she gave the phone to Mr. Orr, and Mr. Orr wrote a statement while talking to McKeighan, which LB then gave to McKeighan's attorney. Id. (Doc. 337); Trial Transcript at 547-551. This is one of two "trial exhibits" plaintiff actually specified when claiming exhibits were stolen from his cell. As the court noted in a prior order dismissing this claim, this exhibit was introduced at trial. At sentencing, Mr. McKeighan objected to an upward adjustment to reflect obstruction of justice. The trial judge noted there were discrepancies between LB and Mr. Orr as to who authored the statement, but found Mr. Orr had credibly testified that McKeighan attempted to get him to state, untruthfully, that the items found in a storage unit, which ultimately led to the charges in the case, belonged to someone else. The judge was persuaded that the note was the product of Mr. McKeighan attempting to shift blame from himself and that it clearly was an attempt to impede the administration of justice. Id., Transcript of Sentencing (Doc. 342) at 13-15.

of conditions at the CCA including overcrowding and use of "boat beds" on the floor; dingy, torn, dirty clothing and linens; broken toilets; cold temperatures; cold food; denial of outside exercise; denial of toiletries; and denial of access to the law library.[6] Id. (Doc. 252). He was correctly advised by the trial judge that claims regarding conditions of confinement must be raised in a civil rights complaint.[7]

Mr. McKeighan filed motions in his criminal case claiming prosecutorial misconduct; that acts of the prosecutor, the USMS, and CCA employees, such as stealing trial exhibits, were impeding his ability to defend in the criminal case; that he was denied his right to retained counsel of his choice; and that his appointed counsel were all ineffective.[8] The trial judge ruled that plaintiff's pro se claims presented no examples of prosecutorial misconduct. Id. (Doc. 323)(Sealed Memorandum and Order filed July 24, 2008). The judge also rejected McKeighan's claim that he was

---

[6] During criminal pretrial proceedings, the Magistrate Judge in Kansas City found that plaintiff had not presented evidence that he was denied access to the prison law library.

[7] Mr. McKeighan repeatedly states that the trial judge told him he had a 1983 claim against defendants and implies that the judge meant even for claims that were not about conditions. However, he does not provide a copy of, or a document and page reference to, any such statement by the judge. A comparison of plaintiff's allegations with the record in his criminal case plainly reveals that he sometimes misunderstood at best, or misrepresented at worst, events and rulings in his criminal case.

[8] Plaintiff's claim that his criminal defense was impeded was dismissed without prejudice, as habeas in nature, in a prior order. See McKeighan, 2009 WL 1631593 at *1. His claim that his legal materials and property were stolen from his cell was also disposed of in prior orders. See McKeighan, 2008 WL 3822892 at *4 - *5. The court reiterates that only two claims remain in this case. Plaintiff's allegations that he could not "call his attorney to prepare for a trial strategy" and was denied access to the law library are conclusory and do not show actual injury. Moreover, the record in plaintiff's criminal case demonstrates that he was not denied access to either counsel or the court.

denied his right to retained counsel of choice.  The judge analyzed this issue "under a prosecutorial misconduct framework because the issue turns on whether the Government's actions that allegedly led to (counsel's) withdrawal were improper," and found that the Government had "a sufficient good faith basis" for its actions. Id. at 11, 16.  The trial judge further found "that there has been no showing of bad faith, misconduct, or retaliation against Mr. McKeighan."  Id. at 16.  If Mr. McKeighan disagreed with these rulings in his criminal case, he must have presented the issues on direct appeal.

Mr. McKeighan filed a Notice of Appeal from the judgment in his criminal case.  Id. (Doc. 329).  His appeal was dismissed by order of the Tenth Circuit (Case No. 08-3204) on March 5, 2009, for failure to file a timely opening brief.  Id. (Doc. 349).  He has filed a Petition for writ of certiorari.  Id. (Doc. 353).

Plaintiff was advised by this court in its screening order as follows:

> Many of the claims regarding events alleged to have occurred during plaintiff's criminal prosecution as well as actions or inactions of the prosecutor and defense counsel have been the subject of motions filed by Mr. McKeighan in his criminal case, including those claiming ineffective assistance of counsel, denial of right to be represented by the attorney of his choice, and denial of court access.  It follows that plaintiff has already had these claims determined by the proper federal district court.  Moreover, he must now raise any challenges to his conviction or sentence in his direct appeal.

McKeighan, 2008 WL 3822892, at *2.  The court further advised plaintiff:

> (Plaintiff) may not at this time recover money
> damages or other relief in this action based upon
> any of his claims that, if proven, would render
> his conviction or sentence invalid. See Heck v.
> Humphrey, 512 U.S. 477, 486-87 (1994). Instead,
> before he may seek such relief in a civil rights
> action, he must prove that his conviction or
> sentence has been reversed on direct appeal or by
> some other appropriate process. Id. . . . The
> court concludes that plaintiff's claims, which in
> essence are challenges to his conviction and
> sentence, are barred by Heck and must be
> dismissed, without prejudice.

Id.

The trial judge in McKeighan's criminal case held a hearing on his pro se motions to restore phone privileges and for release from his October 30, 2007 solitary confinement. The judge denied McKeighan's motion for unrestricted telephone access with conditions allowing access to counsel and defense preparation. He also ruled: "Defendant's motion for release from solitary confinement is denied, because the Government has identified a proper penological purpose in the restrictions placed on Defendant. Turner v. Safley, 482 U.S. 78 (1987)." USA v. McKeighan, (Doc. 279).

## IV.  FIRST AMENDMENT AND DENIAL OF ACCESS CLAIMS

Plaintiff challenges his placement and retention in segregation as having violated his rights under the First Amendment and to court access. He generally claims that the prosecutor in his criminal case told defendant DUSM Shute to order defendant CCA employees to place plaintiff in segregation in order to punish him for going to trial and that plaintiff was repeatedly placed in

segregation by all defendants for this improper reason. As support

for this claim, plaintiff has alleged the following. On March 28,

2007, the prosecutor in his criminal case "instructed the Marshals

to order CCA employees" to place him in segregation, and he was put

in a cell by himself for 10 days. On April 8, 2007, he was "thrown

back into segregation" by Assistant Warden Mundt for complaining

about the acts of employees. Complaint (Doc. 1) at 7. On January

11, 2008, the prosecutor lied that McKeighan "was threatening her

over the phone" and said that was "why she kept throwing (him) into

segregation." Id. at 10. In plaintiff's initial Response (Docs.

38,39) to defendant CCA Employees' Motion to Dismiss (hereinafter

RSP/MD), he alleged that he was released from segregation on

October 5, 2007, but was forced to go back to the Orientation Pod;

and on October 30, 2007, was made permanent party in segregation.

Plaintiff has further claimed as follows:

> The plaintiff was repeatedly placed into solitary
> confinement for sending and filing his own motions
> with the court and for fighting the criminal
> charges. During this time frame . . . plaintiff
> broke none of CCA's rules or regulations and never
> received a hearing once in solitary confinement.
> CCA officials told the plaintiff, "We got a call
> from the Marshals and your (sic) under
> investigation again." In reality this was
> punishment for fighting the case.

Response to Order (Doc. 14)(hereinafter RSP/SCRNORD) at 4. In an

administrative remedy, plaintiff listed his placements as follows:

> March 28, 2007 - I was placed into segregation
> because the prosecutor & CCA Chief said I
> threatened the prosecutor over the telephone.

> April 8, 2007 - A.W. Mundt placed me into
> segregation for a couple hours because I told him

of the illegal actions that CCA employees were
doing to me.

September 18, 2007 - Write-up. Placed into
segregation under investigation.

October 30, 2007 - Placed into segregation because
the prosecutor said I threatened her over the
telephone again . . . .

All I did was call the prosecutor names over the
telephone. . . .

. . . [T]he dates the prosecutor told CCA to throw
me into segregation was shortly after I sent an
excellent Motion to the Judge about the illegal
conduct of the prosecutor. The prosecutor,
marshals & CCA employees have punished me for
going to trial. . . .

See Defendant CCA Employees' Motion to Dismiss (Doc. 34) Exh. F.

The record confirms that on March 28, 2007, Mr. McKeighan
was placed in segregation at the LDC, pursuant to an Administrative
Detention Order signed by Shift Supervisor Roger Moore "on pre-
hearing detention status per USMS." Id. Exhs. B, F. The record
shows that Sandy Elliott, Case Manager, LDC, received a Memorandum
from USM Bradley "by: Judicial Security Inspector Craig Beam,"
dated April 25, 2007, that provided: "Per your request, please
accept this memorandum as our agency's request to continue to house
inmate McKeighan in N-Pod at CCA. This request is for
investigative purposes. . . ." Id. Exh. C. Plaintiff does not
specify an end date of these transfers to segregation. The record
also shows that on October 30, 2007, Mr. McKeighan was placed in
segregation "for investigation" at the request of defendant DUSM
Mike Shute. Id. Exh. J. The record additionally shows that in
September 2006, Mr. McKeighan was placed in detention pending a

hearing on a disciplinary report charging him with unauthorized use of the telephone including the use of other inmates' pin numbers to make unauthorized calls. He was found guilty and sanctioned with 11 days of disciplinary segregation. Id., Exh. D. On March 15, 2007, Mr. McKeighan was written up for having two CCA law books under his mattress, and apparently found guilty. Id., Exh. G. On September 18, 2007, he was written up for having excess clothing and linen in his cell that had been reported stolen. He was placed on pre-hearing detention status. Id., Exh H. He alleges he was placed in segregation for 30 days. From the foregoing, the court finds that the placements in March and October of 2007 are the only ones relevant to plaintiff's claim that he was placed in segregation as punishment for going to trial. The other placements are not shown to have been at the direction of the USMS and involved different matters like discipline.[9]

In his initial RSP/MD, Mr. McKeighan alleged that "defendants" placed him in solitary "to create mental anguish and frustration" and deprived him of liberty without due process.

**A.  Failure to Exhaust**

**1.  Legal Standards**

---

[9]    Plaintiff, in one of his responsive Affidavits alleges that he spent a total time of 335 in segregation at the CCA. Response (Doc 40) at 3. Since he was at the CCA for 840 days, there were obviously many more days that he was not in segregation. As noted, plaintiff alleges facts and provides exhibits indicating that some of the time he spent in segregation was the result of prison disciplinary proceedings. Where a plaintiff is punished for violating a prison regulation, he is not engaged in "protected conduct" and cannot use this punishment as a basis for a retaliation claim.

Section 1997e(a) of Title 42, U.S.C., provides:

> No action shall be brought with respect to prison
> conditions under section 1983 of this title, or
> any other Federal Law, by a prisoner confined in
> any jail, prison, or other correctional facility
> until such administrative remedies as are
> available are exhausted.

Id. In Booth v. Churner, 532 U.S. 731, 733 (2001), the Supreme
Court of the United States, construing § 1997e(a), held that
exhaustion of administrative remedies is "no longer left to the
discretion of the district court, but is mandatory." Section
"1997e(a) requires exhaustion of administrative remedies as a
precondition to bringing litigation, and requires dismissal where
a litigant has failed to complete such exhaustion. Fitzgerald v.
Corrections Corp. of America, 403 F.3d 1134, 1140-41 (10th Cir.
2005).

The Supreme Court further held that exhaustion is required
regardless of the type of relief sought or offered through those
administrative procedures, Booth, 532 U.S. at 734; and "for any
suit challenging prison conditions, not just for suits under §
1983." Porter v. Nussle, 534 U.S. 516, 524 (2002). The Court has
also plainly held that "proper exhaustion . . . demands compliance
with an agency's deadlines and other critical procedural rules."
Woodford v. Ngo, 548 U.S. 81, 90 (2006); Fields v. Oklahoma State
Penitentiary, 511 F.3d 1109, 1112 (10th Cir. 2007)("To exhaust
administrative remedies an inmate must properly comply with
grievance procedures; substantial compliance is insufficient.").
Thus, "[a]n inmate who begins the grievance process but does not

complete it is barred from pursuing a [federal] claim under the PLRA for failure to exhaust his administrative remedies." See Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002).

A prisoner plaintiff's failure to satisfy the § 1997e(a) exhaustion requirement is an affirmative defense that must be raised and proven by defendants. Jones v. Bock, 549 U.S. 199 (2007); Barreras, 484 F.3d at 1241; Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997). To sustain their burden, movants must prove "administrative remedies were, in fact, available" to plaintiff and that he "failed to exhaust these remedies." Purkey v. CCA Detention Center, 263 Fed.Appx. 723, 726 (10th Cir. 2008). "If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact." Hutchinson, 105 F.3d at 564. "If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law." Id.

There is a recognized exception to the exhaustion requirement when an inmate has been prevented from filing a grievance or the facility refused to answer a grievance. See Jernigan, 304 F.3d at 1032 (If prison officials fail to timely respond to a prisoner's grievance or otherwise thwart a prisoner's compliance with the prison's grievance procedures, the prisoner may be deemed to have complied with the exhaustion requirement.); see also Baldauf v. Garoutte, 137 Fed.Appx. 137, 141 (10th Cir. 2005)("[I]f a prisoner is hindered from utilizing the grievance

procedure, (it) is not available."); <u>Garcia v. Taylor</u>, 113 Fed.Appx. 857, 859 (10th Cir. 2004)("[R]efusing a prisoner grievance forms could raise an inference that the plaintiffs have exhausted 'available' administrative remedies.").[10]  The burden of proving that exhaustion was impeded is upon the plaintiff.

## 2. Discussion

The court already found in its FEBMO, based partly upon plaintiff's own allegations and exhibits, that a multi-level administrative remedy procedure was available to him at the LDC, and described that process.[11]  The court also discussed plaintiff's attempts to utilize this process to exhaust the particular claims in this case based upon plaintiff's allegations and materials as well as those submitted by defendants in support of their motions.

Mr. McKeighan alleged in his Complaint that he had fully exhausted administrative remedies on his claims, and has since flatly stated that he possessed evidence of that exhaustion.  If this were the case, he should by now have presented copies or summaries of the timely-submitted IR, the formal Grievance, and the Appeal of the denial of that Grievance to the Warden on his claim that he was placed and held in segregation solely as punishment for

---

[10]    Unpublished opinions are cited for their reasoning only.

[11]    The steps required in the administrative remedies procedure applicable to plaintiff at the LDC included: (1) an attempt at informal resolution (IR) through submission of a form 14-5A to a staff member within 7 days of the incident; (2) the submission of a formal Grievance on form 14-5B to the Facility Grievance Officer within 5 days; and (3) an appeal to Warden submitted by the inmate completing the proper spaces on the same 14-5B form already submitted as the formal Grievance and returned upon its resolution.

going to trial and filing motions.[12]  He has done neither.  Since Mr. McKeighan has been required to actually produce evidence of exhaustion on this particular claim, he now precisely alleges instead that he did not exhaust remedies because he was told this particular claim was not grievable and denied forms.  Plaintiff has thus effectively conceded that he did not exhaust on this claim.  The court finds that it is uncontroverted that Mr. McKeighan did not fully and properly exhaust the administrative remedy process on this claim prior to filing this action in federal court.

To prove his allegations that he was prevented from exhausting, Mr. McKeighan has submitted his own affidavit and those of three other inmates at the USPL.  In its FEBMO, the court found that plaintiff had repeatedly claimed "obstruction" of the CCA's grievance process, but had provided "insufficient facts as to an impediment that actually affected his exhaustion efforts on each remaining claim."  The court cited plaintiff's conclusory statements that some forms were withheld, many submitted disappeared, and many were not returned in a timely manner or processed properly.

---

[12]  In its FEBMO, the court discussed all exhibits of remedy attempts submitted by any party that were relevant to this claim.  See McKeighan, 2010 WL 446503, at *7-*10.  The court found that

> the record before the court does not include an IR, then a Grievance, and then an appeal to the Warden, in which Mr. McKeighan claimed he had been placed and held in segregation solely as punishment for going to trial and filing motions and actually alleged facts to support this claim.

Id. at *9.  The court further found that plaintiff began the administrative process on this claim by filing a Request on March 15, 2008, but did not complete it.  This Request was not filed within 7 days of either of plaintiff's placements in segregation.

Plaintiff was advised, again, that such conclusory allegations are insufficient. The court expressly noted that Mr. McKeighan had failed "to name a particular CCA employee and describe circumstances, including dates, showing that person was involved in the actual obstruction or impediment of a specific Request, IR, or Grievance submitted by him, which properly presented either of the two claims remaining in this case." Still, plaintiff continues to fail to differentiate among individual CCA employees and specify which is alleged to have taken which particular action on a certain date.[13] The act of a CCA employee of placing plaintiff into segregation, in maintaining certain conditions in the segregation unit, of denying plaintiff a remedy form, of losing his remedy form, of improperly refusing to hear his remedy request - all are different acts and are erroneously grouped by plaintiff into a single allegation that all defendants took all these acts. The court is not obliged to speculate from such vague allegations.

Plaintiff's affidavits do not sufficiently describe his acts in attempting to properly complete each step in the administrative grievance process on this particular claim, or the acts of a participating CCA employee that actually impeded each

---

[13] Plaintiff's complaint, pleadings and exhibits frequently use either the collective term "defendants" or a list of defendants named individually but with no distinction as to what acts are attributable to whom, making it "impossible for any of these individuals" as well as the court "to ascertain what particular unconstitutional acts" each is alleged to have committed. See Robbins v. Okla., 519 F.3d 1242, 1250 (10th Cir. 2008). The Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 565 FN 10 (2007) criticized complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." Mr. McKeighan clearly fails to "isolate the allegedly unconstitutional acts of each defendant." See id.

18

attempt.  Instead, plaintiff's affidavits (Docs. 40, 51) contain the same general statements made in his Complaint, that while at the LDC he and other inmates "complained on numerous occasions" to a list of defendants and asked "on separate occasions" for forms, but forms were refused while completed ones "always disappeared" and were withheld until untimely or otherwise not properly processed.

"Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(e), except the mere pleadings themselves. . . ." <u>Celotex</u>, 477 U.S. at 324.  Here, there is basically an absence of any evidence, beyond the allegations in the Complaint.  Conclusory and self-serving allegations by a prisoner that prison officials thwarted his efforts to exhaust administrative remedies are insufficient.  <u>See</u>, <u>e.g.</u>, <u>Simpson v. Jones</u>, 316 Fed. Appx. 807, 810-811 (10th Cir. 2009)(prison inmate's unsworn, generalized and conclusory allegations regarding allegedly rampant practice on part of Oklahoma Department of Corrections employees to hinder or sabotage inmates' attempts to exhaust their administrative remedies as required by § 1997e(a), were insufficient to create any genuine issue of material fact as to whether he had in fact exhausted his administrative remedies); <u>Bell v. Ward</u>, 189 Fed. Appx. 802, 804 (10th Cir. July 26, 2006)(where OSP submitted evidence regarding the prison grievance process for the relevant time period, and prisoner responded with only conclusory allegations that prison officials destroyed his appeals and falsified the prison grievance

log, record failed to establish that administrative remedies were unavailable); see also <u>Thomas v. U.S. Bureau of Prisons</u>, 282 Fed. Appx. 701, 704 (10th Cir. June 24, 2008)(unpublished)(conclusory and self-serving statement by prisoner that it was not feasible to exhaust administrative remedies due to illness-even though presented in an affidavit-was insufficient to create a genuine issue of fact to survive summary judgment); <u>Deschaine v. McLaughlin</u>, 2010 WL 935662 (D.Colo. Mar. 9, 2010); <u>BancOklahoma Mortgage Corp. v. Capital Title Co.</u>, 194 F.3d 1089, 1101 (10th Cir. 1999)(An affidavit is an appropriate vehicle to establish a fact for summary judgment purposes, but "the affidavit must set forth facts," not "sweeping, conclusory statements that do not mention any single transaction, date or person.");[14] <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1111 (10th Cir. 1991)(The affidavits of a party opposing summary judgment must "set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient").

Plaintiffs allegations in his own Affidavits are simply too conclusory to support an inference that prison officials thwarted his efforts to pursue administrative relief to such an extent that the administrative remedies were rendered unavailable. The inconsistencies in plaintiff's allegations regarding exhaustion provide a further basis for discounting them due to their conclusory nature.

---

[14]    Unpublished cases are cited herein for their reasoning rather than their precedential value.

In addition to plaintiff's own ambiguous statements, he proffers the conclusory and hearsay statements of three other inmates. All three declare that they were inmates at the LDC at the same time as McKeighan, although few dates are provided. Affidavits (Doc. 51). They all aver that they heard McKeighan and other unnamed inmates complain "on many occasions" "that CCA Administration was punishing them for going to trial" and that when "these inmates," including McKeighan, asked for a grievance, "CCA employees" refused to bring one or told them they could not grieve this issue. Id. Such vague and inadequately supported allegations are simply insufficient to prove that Mr. McKeighan was actually prevented from initiating and completing each step of the administrative remedy process during the appropriate time frame on this particular claim. Moreover, the attestations of these three inmates as to what they heard McKeighan and other inmates say or what they heard CCA employees had said to someone other than the affiant appear to be either inadmissible hearsay or not based upon the affiant's personal knowledge.[15]  See Fed.R.Evid. 602; Fisher v. Okla. Dept. of Corrections Unknown State Actor, 213 Fed.Appx. 704, 708 (10th Cir. 2007).  The court finds that these affidavits fail

---

[15]     The content of summary judgment evidence must be generally admissible.  Argo v. Blue Cross & Blue Shield of Kansas, Inc., 452 F.3d 1193, 1199 (10th Cir. 2006).  If that evidence is presented in the form of an affidavit, under the Rules of Civil Procedure, "the evidence must be based on personal knowledge."  Bryant v. Farmers Ins. Exch., 432 F.3d 1114, 1122 (10th Cir. 2005).  "Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because a third party's description of a witness supposed testimony is not suitable grist for the summary judgment mill."  Adams v. American Guarantee & Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000)(internal quotations omitted).  The statements in these affidavits are offered to prove the truth of the matter stated, that plaintiff was prevented from exhausting administrative remedies on this claim.

to create a material issue of fact for trial. In addition, they are not sufficient to excuse Mr. McKeighan from the exhaustion prerequisite on these two particular claims.

Plaintiff and defendants have provided evidence, in the form of exhibits, which actually illustrate that Mr. McKeighan was provided remedy forms at the LDC that were not refused, lost, or denied as not grievable, and that he managed to submit many IRs and Grievances on many matters. See Musacco v. Torres, 333 Fed.Appx. 385, 387 (10th Cir. 2009)(rejecting prisoner's allegation that prison officials made it difficult to file grievances where the record demonstrated the prisoner had "submitted multiple grievances, showing that he [was] adequately familiar with the procedures"). Contrary to the conclusory claims in plaintiff's affidavits, none of the exhibits produced by either party contains a response that the issue is simply "not grievable." Some of the exhibited remedy forms that are relevant to the claims in this case include a response that the issue is "not grievable due to time limit." Denying an administrative grievance as untimely is undoubtedly a valid disposition. If an inmate does not comply with the time limits that are required by the prison for submitting grievances, he has not exhausted his remedies. Woodford v. Ngo, 548 U.S. at 83-84 (A prisoner cannot satisfy the PLRA's exhaustion requirement by "filing an untimely . . . administrative grievance or appeal;" the PLRA requires the "proper exhaustion of administrative remedies"); Thomas, 282 Fed.Appx. at 703; Patel v. Fleming, 415 F.3d 1105, 1109 (10th Cir. 2005).

Plaintiff has presented no competent evidence that he requested a remedy form from a particular CCA employee on a date certain and that the improper acts of that person prevented him from submitting a timely remedy form between either March 28, 2007 to April 6, 2007, or October 30, 2007 to November 6, 2007, on the claim that he was placed in segregation as punishment for going to trial. He has not produced a copy that was retained by him of any IR, Grievance, or Appeal raising this claim that would allow the court to conclude that one was actually submitted but never answered or returned. He does not produce a copy of any IR, Grievance, or Appeal in which he alleged that he had requested a form to file a remedy on this claim but a particular CCA employee improperly refused to provide the form. Nor does he produce a copy of any IR, Grievance, or Appeal in which he challenged a lower-level ruling that his segregation for punishment claim was not a grievable issue.

The court has reviewed all the exhibits submitted by both plaintiff and defendants, and finds that the record before it does not warrant any exception to the exhaustion requirement in this case. The court concludes that plaintiff has not alleged facts or presented sufficient evidence showing that he was improperly prevented by prison officials from exhausting his administrative remedies on the two claims remaining in this action. Accordingly, summary judgment shall be entered in favor of all defendants on the ground that plaintiff failed to exhaust administrative remedies. Based upon this disposition, it is not necessary for the Court to

address the alternative bases upon which defendant Shute has moved for summary judgment.

### B.   1915(e)(2)(B) Dismissal

The court additionally finds that, even if defendants had not provided sufficient proof of plaintiff's failure to exhaust, or plaintiff had provided proof that he was prevented from exhausting, this action must be dismissed on the record now before the court under Congress' directive that a district court shall dismiss, at any time, any portion of a prisoner complaint that fails to state a claim.  28 U.S.C. § 1915A(b)(1); 28 U.S.C. § 1915(e)(2)(B)(ii).

### 1.  Legal Standards

Plaintiff's claim that he was segregated without a hearing, standing alone, does not state a federal constitutional violation because he is not entitled to a particular degree of liberty in prison.  Sandin v. Conner, 515 U.S. 472 (1995); Trujillo v. Williams, 465 F.3d 1210, 1225 (10th Cir. 2006); Hewitt v. Helms, 459 U.S. 460, 468 (1983)(There is no right independently protected under the Due Process Clause to remain in the general prison population.).  "It is recognized that inmates are not entitled to a particular degree of liberty in prison, and that ordinarily a change in an inmate's prison classification to administrative segregation does not deprive the inmate of liberty."  Templeman v. Gunter, 16 F.3d 367, 369 (10th Cir. 1994)(Colorado laws and

regulations do not entitle inmates to remain in the general population absent certain conduct); see Hewitt, 459 U.S. at 468 ("the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"), receded from on other grounds by 515 U.S. 472, (1995).

Plaintiff is correct that "[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his 'constitutional rights'" including "his rights to access the courts." Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990); Penrod v. Zavaras, 94 F.3d 1399, 1404 (10th Cir. 1996). However, "in order to establish a First Amendment retaliation claim, a prisoner must demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the adverse action." Baldauf v. Hyatt, 2008 WL 280839 at *7 (D.Colo. 2008) (unpublished decision) (citing Scott v. Churchill, 377 F.3d 565, 569 (6th Cir. 2004)). To satisfy the causation element of a First Amendment claim of retaliation, "[a] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998)(internal quotation marks omitted)(citing Smith, 899 F.2d at 949-50). "It is imperative that [a] plaintiff's pleading be factual and not conclusory." Frazier v. Dubois, 922 F.2d 560, 562 FN 1 (10th Cir. 1990). "Mere allegations of constitutional retaliation will not

25

suffice; plaintiffs must rather allege specific facts showing

retaliation because of the exercise of the prisoner's

constitutional rights." <u>Id.</u>; <u>see</u> <u>also</u> <u>Jones v. Greninger</u>, 188 F.3d

322, 325 (5th Cir. 1999)("[T]he inmate must allege more than his

personal belief that he is the victim of retaliation.").

The Tenth Circuit has pointed out that:

> [t]he Supreme Court's decisions in <u>Bell Atl. Corp.</u>
> <u>v. Twombly</u>, 550 U.S. 544 (2007), as well as
> <u>Erickson v. Pardus</u>, (551 U.S. 89 (2007)) . . .
> introduced a new standard of inquiry to use in
> reviewing § 1915(e)(2)(B)(ii) dismissals. <u>See</u>
> <u>Kay</u>, 500 F.3d at 1218; <u>see</u> <u>also</u> <u>Smith v. United</u>
> <u>States</u>, 561 F.3d 1090, 1098 (10th Cir. 2009). As
> a result, "we look for plausibility in the
> complaint" and "[i]n particular, we look to the
> specific allegations in the complaint to determine
> whether they plausibly support a legal claim for
> relief." <u>Kay</u>, 500 F.3d at 1218 (quotation marks
> and citations omitted). "Rather than adjudging
> whether a claim is improbable, factual allegations
> in a complaint must be enough to raise a right to
> relief above the speculative level." <u>Id.</u>
> (quotation marks and citation omitted). Under
> this new standard, "a plaintiff must nudge his
> claims across the line from conceivable to
> plausible in order to survive a motion to
> dismiss." <u>Smith</u>, 561 F.3d at 1098 (quotation
> marks and citation omitted).

<u>Bloom v. McPherson</u>, 346 Fed.Appx. 368, 372 (10th Cir. 2009);

<u>Robbins</u>, 519 F.3d at 1247-48; <u>see</u> <u>Ellibee v. Fox</u>, 244 Fed.Appx.

839, 843 (10th Cir. 2007). "Plausible" in this context does not

mean "likely to be true," but rather refers "to the scope of the

allegations in a complaint: if they are so general that they

encompass a wide swath of conduct, much of it innocent," then the

plaintiff has not "nudged (his) claims across the line from

conceivable to plausible." <u>Robbins</u>, 519 F.3d at 1247 (citing

_Twombly_, at 1974).  "[A] plaintiff's obligation to provide the
'grounds' of his 'entitlement to relief' requires more than labels
and conclusions, and a formulaic recitation of the elements of a
cause of action will not do."  _Twombly_, 550 U.S. at 555 (citations
omitted).


## 2.  Discussion

The first element of plaintiff's claim requires a showing
that he was engaged in protected conduct.  The filing of motions
and defending in a criminal case clearly fall under the conduct
protected by the First Amendment.  Accordingly, plaintiff's
allegations that he was subjected to retaliation for filing motions
and defending in his criminal case satisfy the first element of his
retaliation claim.

The second element of plaintiff's claim requires that he
show he was subject to an adverse action.  _Baldauf_, 2008 WL 280839,
at *7.  Plaintiff was placed in segregation.  Accordingly, the
court assumes for screening purposes, that plaintiff has satisfied
the second element of his First Amendment retaliation claim.  _See_
_Montoya v. Bd. of County Comm'rs_, 506 F.Supp.2d 434, 448 (D.Colo.
2007)(finding that placement in segregation for several months was
an adverse action).

The third element of plaintiff's claim requires that he
show that "a causal connection" existed between his conduct and the
adverse action.  _Baldauf_, 2008 WL 280839, at *7.  As noted, to
prevail on the causation element of a claim for retaliation, a

plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers . . . would not have taken place." Peterson, 149 F .3d at 1144 (citing Smith, 899 F.2d at 949-50).

Plaintiff's allegations that defendant DUSM Shute caused CCA officials to place him in segregation as punishment for defending and filing motions in his criminal trial are supported by no factual allegations whatsoever, and are speculative at best. Shute's affidavit, on the other hand, is based upon Shute's personal knowledge and is evidence that there was a proper reason for McKeighan's placement in segregation on the only date that defendant Shute participated.[16] Plaintiff has not alleged specific facts or provided competent evidence to controvert defendant Shute's properly set forth "Statement of Facts" in his motion. Nor has plaintiff refuted Shute's detailed sworn declarations that defendant Shute requested Mr. McKeighan's placement in segregation on October 30, 2007, pending investigation "because plaintiff had purportedly threatened the Assistant U.S. Attorney prosecuting his case," as well as government witnesses, and that said request was believed to be "necessary to ensure the safety of those threatened" and to allow CCA staff to better monitor plaintiff's actions and limit his communications with fellow inmates and individuals outside the prison. Plaintiff also fails to controvert or refute with specific facts or evidence defendant Shute's personal

---

[16] Shute also avers that after this placement, there were no further reports of threats, and plaintiff remained in segregation until the threat investigation was concluded.

declarations that he "did not request plaintiff be placed in segregation due to his participation in his criminal trial, for purposes of punishment, or for any reason other than the threat investigation," did not personally participate in any other placement of plaintiff in segregation, and did not send a facsimile to the CCA in response to plaintiff's grievance dated March 28, 2007, ordering CCA employees to place plaintiff in M-Pod.

The affidavit of defendant Shute together with the record in McKeighan's criminal case, show there was a legitimate purpose for placing Mr. McKeighan in segregation under investigation: that he was believed to have telephoned or had others telephone the prosecutor and witnesses during trial, used another inmate's pin number when he was under phone restrictions, asked a friend to create a false statement in his defense, and another friend to receive and deliver money to hire an attorney as well as to destroy evidence. Regardless of whether or not these investigations resulted in findings that Mr. McKeighan engaged in these improper or illegal activities, no facts are alleged to show that any internal investigations were completely illegitimate or undertaken other than in good faith. Plaintiff has alleged no facts that, if proven, would establish that his placement in segregation on October 31, 2007, was for a purpose other than investigation or was for an improper purpose. Plaintiff's claim that his placement in segregation on October 30, 2007, was improper was rejected by the judge in his criminal trial who found a legitimate government purpose for that placement.

Plaintiff has the burden of showing personal participation of defendant Shute in his allegedly illegal placements in segregation. He has not alleged specific facts or provided sufficient evidence to controvert defendant Shute's properly set forth "Statement of Facts" in his motion,[17] or to refute Shute's detailed declaration, showing that defendant Shute did not personally participate in any placement of Mr. McKeighan in segregation at the LDC other than on October 30, 2007. Mr. McKeighan has also failed to refute Shute's sworn declaration that Shute did not send the redacted USMS facsimile cover sheet dated March 28, 2007, ordering CCA employees to place plaintiff in M-pod.

Mr. McKeighan also alleges no plausible connection between

---

[17]    Defendant Shute's Motion for Summary Judgment complies with D. Kan. Rule 56.1(a), which pertinently provides:

> The memorandum or brief in support of a motion for summary judgment must begin with a section that contains a concise statement of material facts as to which the movant contends no genuine issue exists. The facts must be numbered and must refer with particularity to those portions of the record upon which movant relies. All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.

Id. Plaintiff's Response (Doc. 55) does not comply with D. Kan. Rule 56.1(b):

> (1) A memorandum in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute must be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed.

> (2) If the party opposing summary judgment relies on any facts not contained in movant's memorandum, that party must set forth each additional fact in a separately numbered paragraph, supported by references in the record, in the manner required by subsection (a), above. . . .

Id. Plaintiff also filed a "Surreply" (Doc. 60) which did not comply with D. Kan. Rule 56.1(b).

the adverse actions of defendant CCA employees, in transferring him to segregation on either date based upon a USMS directive, and plaintiff's protected exercise of his First or Fifth Amendment rights in his criminal trial. See Stidham v. Peace Officer Standards and Training, 265 F.3d 1144, 1157 (10th Cir. 2001)(A plaintiff must allege in the complaint an affirmative link between the alleged constitutional violation and a defendant's participation.). He does not plausibly allege that the CCA employee who placed him in segregation either time was even aware that plaintiff was defending and filing motions in his criminal case or suggest any reason why that individual had any reason or motive to punish him for his protected action. Mr. McKeighan's allegations are actually that the prosecutor in his criminal case and defendant DUSM Shute were the ones with the bad motives, i.e., to punish him for going to trial and to coerce him to enter a plea. Defendant CCA employees were acting in response to the directions of the USMS, and "not in response to (McKeighan's) actions concerning the defense of his criminal case." Plaintiff's own allegations and evidence, showing that on March 28 and October 30 of 2007 he was placed in segregation pursuant to instructions from the USMS, support, rather than refute, the statements of the CCA employees. Plaintiff presents no evidence whatsoever that any CCA employee was acting in response to plaintiff's filings and decisions to go to trial in his criminal case, or were aware of any improper motive underlying the directives of the USMS. Nor does he present any rationale for holding defendant CCA employees liable

for the alleged actions of either the DUSM or the federal prosecutor.[18] Plaintiff certainly has not shown that his filing of motions and defending in his criminal case was the "but for" cause for any CCA employee's act of placing him in segregation.

The evidence in the record, as opposed to the plaintiff's conclusory allegations, shows that there was a legitimate purpose for placing Mr. McKeighan in segregation on March 28 and October 30, 2007. The movants are entitled to judgment as a matter of law because the nonmoving party has not established an essential element of a claim for which the nonmovant has the burden. Celotex, 477 U.S. at 322.

Plaintiff argues that retaliation should be inferred from the proximity of his placements in segregation to his filing of motions in his criminal case.[19] However, Mr. McKeighan has not alleged sufficient facts to establish a causal connection by proximity. For example, plaintiff points to a motion he filed on October 26, 2007, (Motion to Subpoena Witnesses and Exhibits)(Doc. 179), and then notes that on October 30, 2007, he was placed in segregation. Plaintiff ignores that he filed six other pro se motions, as well as three notices of interlocutory appeal, between December 4, 2006 and September 10, 2007, and does not allege that

---

[18]    If plaintiff is claiming that movant CCA employees violated his constitutional rights by following the directive of the USMS, he utterly failed to present this claim in any administrative remedy.

[19]    The presentation of circumstantial evidence such as temporal proximity, a chronology of events, or suspicious timing may be sufficient to support allegations of retaliation. See Smith, 899 F.2d at 949 ; Deschenie v. Bd. of Educ. of Cent. Consol. Sch. Dist. No. 22, 473 F.3d 1271, 1278 (10th Cir. 2007).

he was placed in segregation following the filing of any of these motions. <u>U.S. McKeighan</u>, Case No. 06-20066 (Docs. 46, 52, 62, 79, 121, 128, 143, 148, 155).[20] Plaintiff alleges no facts showing that "but for" his having filed a motion on October 26, 2007, he would not have been placed in segregation on October 30, 2007. Plaintiff has not provided the dates of any other transfers to segregation and connected those to actual dates on which he filed motions in his criminal case.

Plaintiff alleges in his <u>Surreply</u> (Doc. 60), apparently as additional proof that he was punished for going to trial, that "the Defendants" have punished and pressured him and "many other American citizens" for insisting on going to trial, have conspired to force them into pleading guilty,[21] and have harassed their paid attorneys, lied to the judge, and "used judicial influence" to force the paid attorney off the case in order to force public defenders upon them. These allegations are striking in their utter lack of factual support, particularly after plaintiff was plainly advised of his burden to provide specific facts.

Plaintiff still fails to state a claim of denial of access as a result of his placement in segregation because he still fails to show the crucial element of actual injury. He does not allege that he was prevented from filing any motion in his criminal case,

---

[20]     Within two weeks of his placement in segregation, plaintiff managed to file another eight pro se motions.

[21]     Plaintiff was informed in the court's screening order that conclusory allegations of conspiracy and retaliation are not sufficient to state a claim. <u>See</u> <u>McKeighan</u>, 2008 WL 3822892 at *6 FN 12.

and the record from those proceedings would patently refute such a notion. The court concludes that plaintiff has not alleged sufficient facts to support his constitutional claims that his placements in segregation at the LDC in either March or October 2007, or on any other dates, were to punish him for going to trial or exercising his right of access to the courts.

## V. CLAIM OF CRUEL AND UNUSUAL PUNISHMENT

In his Complaint, plaintiff complained of being placed in segregation on March 28, 2007, in a cell by himself for 10 days and denied recreation. He later alleged that the "last time" he was on recreation restriction was from "around the first week" of November, 2007 to January 3, 2008, when Chief Daugherty, Chief Roberts and Lt. George Green refused to give anyone in L-Pod & M-Pod (segregation units) any type of recreation.[22] See RSP/MD (Doc. 39) at 18. However, plaintiff additionally alleged in his Complaint that on May 7, 2008, he was placed on a 15-day no-recreation restriction. In his RSP/SCRNORD, plaintiff alleged that defendants denied him any type of recreation "for multiple weeks at a time" and "sometimes" for over 45 days.[23] Later, plaintiff also stated that Green was demoted on March 12, 2008, and Daniels made

---

[22] Plaintiff has indicated elsewhere that he received recreation on a few days during this time period: 1st wk of Nov 2007 to 1/2/08 no rec. 1/3 & 1/4 rec. 1/5-1/22 no rec. 1/23 rec. 1/24 - 1/28 no rec. 1/29/08 rec. 1/30,1/31 no rec. 2/1/08 rec. 2/2 - 2/13 no rec. 2/14 rec. 2/15-25 no rec. 2/26-2/29 rec. RSP/MD at 19.

[23] This court previously dismissed plaintiff's many other claims of cruel and unusual punishment as not supported by crucial facts, such as dates and duration.

sure they got recreation. RSP/MD at 19. The court finds from these allegations that Mr. McKeighan complains of recreation restrictions during three separate periods of time: (1) 10 days beginning on March 2007, (2) 15 days beginning on May 7, 2007, and (3) from the first week in November, 2007 to January 3, 2008.

In his RSP/MD, plaintiff referred to period (3) and stated that it was "around 59 days." He alleged that during this period, he was confined in a small cell with two other inmates, was locked down for 24 hours per day, and denied any outside recreation. He further alleged that George Green said this was because CCA was understaffed for the winter months. RSP/MD at 18; see also Complaint (Doc. 1) pg. 13.

Defendants agree that plaintiff was "temporarily" held in a segregation cell for about two months[24] that contained three inmates, which they describe as "an episodic omission by one or more officials at CCA that assigned him to that cell." Defendant CCA employee's Motion to Dismiss (Doc. 34) at 18.

### A.  Failure to exhaust

Defendants contended in their Motion to Dismiss that plaintiff failed to exhaust administrative remedies on this claim. As with plaintiff's other claim, the court in its FEBMO discussed all exhibits of administrative remedy attempts that were relevant to plaintiff's Eighth Amendment claim, found that defendants'

---

[24]    Defendant CCA employees point out that plaintiff has not alleged that he was denied all ability to exercise, or that he was physically harmed.

motion was properly supported, and held that the burden shifted to Mr. McKeighan to show a genuine issue of fact for trial on the issue of exhaustion. McKeighan, 2010 WL 446503 at *6. The court considers plaintiff's evidence under the exhaustion standards set forth earlier herein.

With his Eighth Amendment claim, plaintiff also went from stating in his Complaint that he had exhausted administrative remedies to now claiming in his Affidavit (Doc. 57) that he was prevented from exhausting. The court thus finds that plaintiff has conceded that he failed to fully and properly exhaust administrative remedies in a timely manner on the claim that his constitutional rights were violated when he was held in a cell with two other inmates and denied outside recreation.

The court notes that Mr. McKeighan has provided no evidence that he made any effort to exhaust regarding the restrictions during periods (1) and (2). He does make some additional effort with regard to period (3). Plaintiff states in his Affidavit (Doc. 51) that he filed a Request on March 1, 2008 and the IR on March 19, 2008, "complaining about living in an overcrowded cell with no recreation." He further states that Zen Daniels was "the staff member involved in the IR,"[25] and that Daniels marked it "unresolved" and turned it back in. He then states that "during the first week of April Case Manager Sandra Elliott "came and told

_____

[25]     In his RSP/MD at 17, plaintiff stated instead that the IR was sent on March 19, 2008, "and then disappeared." Plaintiff's varying allegations and apparent failure to retain copies have made it difficult to track his attempts to exhaust.

the Plaintiff, 'You cannot grieve not receiving any recreation. It is a privilege that MUST be earned.'" He next states that on April 7, 2008, he filed "the grievance" based upon "what and how his case manager told him." He further states that "this grievance" was returned to him on April 10, 2008, and "Defendant Ken Daugherty would not process it." He states that he "was told to re-do the grievance by the grievance officer (Ms. Mikki Adams)," and that he re-wrote the Request, the IR and the Grievance and turned them back in to "CCA staff," and they disappeared. Plaintiff refers to Exhibit N discussed by defendants and says it is "this grievance," but then says there were two Grievances filed on the overcrowding/ no recreation issue.

Subsequent to filing his personal Affidavit, plaintiff provided a copy of a Grievance dated June 12, 2008. See Plaintiff's Supp. to Response (Doc. 57) Exh. A. He entitled this Grievance "Overcrowding." At the top he listed "Federal & State Violations": Request 3-1-08, IR 3-19-08, and Grievance 4-7-08. Under "Overcrowding," he listed: IR 6-9-08 and Grievance 06-11-08. In this Grievance, McKeighan stated that Ken Daugherty and Bruce Roberts have "intentionally overcrowded CCA/LDC" and knowingly placed three inmates into a cell 7 ½ feet by 15 feet. He claimed it was a violation of "state and federal laws and the "American Correctional Association" and other standards. His "Requested action was: "Stop placing three inmates in these small cells. Stop overcrowding CCA/LDC." Plaintiff also stated in an attachment to this Grievance that his 3-1-08 Request disappeared, and his 3-19-08

IR was unresolved so he filed a Grievance, and that Daugherty responded to his 4-07-08 Grievance: "Form completed improperly. Only one issue is to be addressed per informal complaint. Resubmit." Plaintiff then stated that he "rewrote the Grievance and turned it back in to the Grievance Officer," and it disappeared. He then wrote "6-11-08 Grievance," after which he stated that he wrote "the Informal Resolution" again on 6-9-08 but this time "on Daugherty and Roberts, and Daugherty improperly responded. Plaintiff finally stated in the attachment: "The three inmates are locked down in these small cells for 24 hours per day. We receive very little recreation (below state standards). There is no room to exercise in the cells. . . . There are only 2 bunks in the cells. The third inmate has to sleep on the floor in a rubber boat" near the toilet.

Even though plaintiff has attempted to provide more detail, his new exhibit and his Affidavit are not always consistent and do not include any response to his June 12 Grievance or show that the final step of an appeal to the Warden was taken. In any event, the last day of period (3) was January 3, 2008, and this Grievance, whether considered as first submitted on March 1 or June 12 of 2008 was not filed within 7 days of any date within period (3). The court further notes that plaintiff did not provide any dates in this Grievance of the restrictions he was challenging. Another problem with this Grievance is that the first IR and Request he refers to as having exhausted the lower steps were denied as untimely. Thus, it may surely be assumed that this later one was

also untimely. The court finds that plaintiff's allegations and exhibit of a Grievance or Grievances filed on March 1, 2008, do not prove that he fully and properly exhausted administrative remedies.

In his own Affidavits, plaintiff relies upon the same general conclusory allegations to prove he was prevented from exhausting on his Eighth Amendment claim as he did on his First Amendment claim. For reasons already stated, the court finds these allegations are not sufficient to prove that Mr. McKeighan was prevented from exhausting his Eighth Amendment claim,[26] and fail to create a genuine issue of material fact for summary judgment purposes.

Plaintiff also offers the same three affidavits of other inmates as well. With respect to this particular claim, the first of plaintiff's affiants lists several defendants "and CCA staff" and avers that they refused to give McKeighan "and others" recreation "for many weeks at a time, while keeping them locked down in a small cell with three inmates in it for 24 hours per day." (Doc. 51). He further avers that "McKeighan and the other two inmates in his cell complained on many occasions" about not receiving recreation and asked "CCA's Administration" for remedy forms, but "these CCA employees refused" and told McKeighan and the

---

[26]     Plaintiff generally alleges in his Affidavits that he, his two cell mates, and other inmates housed in the LDC segregation units complained on many occasions to a list of CCA employees about not receiving any recreation and on "several occasions" asked for a grievance, but "these people" told the plaintiff and other inmates that this "is a non-grievable issue" and refused to pass out remedy forms. He also makes the somewhat contradictory statement that when he would file a Request, IR, and Grievances, "they always disappeared." He then alleges that when he filed a remedy on the no recreation/overcrowding issue, Daugherty would not accept "the first grievance" so plaintiff refiled, and it disappeared. These allegations are vague and conclusory.

other inmates that it was a non grievable issue. The second affiant avers that "for many weeks at a time the segregation unit was denied any type of recreation," and "the inmates" in the unit complained frequently to a list of CCA employees about being locked down for 24 hours per day without recreation. He further avers that when "we (the segregation inmates, including James McKeighan and myself)" asked for a grievance, the "CCA employees" told them, "Recreation is a privilege that MUST be earned;" and that these "same CCA employees told us that not receiving recreation was not a valid issue to grieve and they refused to give us a grievance." The third affiant avers that in April of 2008, he was placed in the same cell as McKeighan, which "was small and had only two bunks with three people in it." He also avers that their cell "was denied recreation for many weeks at a time even though other cells received recreation." He too avers that when McKeighan would complain to a list of CCA employees, "they" told him "it was a non grievable issue" and "they refused to give him a grievance." The court notes that neither of the two Grievances which Mr. McKeighan filed on his Eighth Amendment issue was responded to with "non grievable issue" or "recreation must be earned." One response was: "Received, I will look into your complaints," and another was "non-grievable due to time." As with his other claim, even though plaintiff was advised in FEBMO of his obligations under Fed.R.Civ.P. 56, in responding to the defendants' dispositive motion, he has provided nothing other than his own general conclusory statements and those of other inmates as evidence of his

asserzione that his relevant remedy attempts on this particular claim were thwarted.

The court concludes that plaintiff does not show that he filed a timely IR, Grievance, and Appeal to the Warden claiming that his federal constitutional rights were violated because he was denied all outside recreation while housed in a small cell with two other inmates during any of the time periods alleged, and has not shown that he was prevented from doing so.

### B. 1915(e)(2)(B) Dismissal

The court additionally finds that, even if defendants had not proven a failure to exhaust or plaintiff had proven he was prevented from exhausting, this action must be dismissed on the record now before it under Congress' directive that a district court shall dismiss, at any time, any portion of a prisoner complaint that fails to state a claim. 28 U.S.C. § 1915A(b)(1); 28 U.S.C. § 1915(e)(2)(B)(ii).

### 1. Legal Standards

"The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." Tafoya v. Salazar, 516 F.3d 912, 916 (10th Cir. 2008). "There is substantial agreement among the cases in

this area that some form of regular outdoor exercise is extremely important to the psychological and physical well being of inmates." Fogle v. Pierson, 435 F.3d 1252, 1260 (10th Cir. 2006). "What constitutes adequate exercise will depend on the circumstances of each case," and "penological considerations may, in certain circumstances, justify restrictions." See Perkins v. Kan.Dept. of Corrections, 165 F.3d 803, 810 FN 8 (10th Cir. 1999). Prison officials have broad discretionary authority to manage and control prisons. Bailey v. Shillinger, 828 F.2d 651, 653 (10th Cir. 1987).

The test for a "deliberate indifference" claim under the Eighth Amendment includes "both an objective and a subjective component." Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000). Plaintiff bears the burden of showing, objectively, that the deprivation alleged is sufficiently serious-the prison official's act or omission results in the denial of the minimum civilized measure of life's necessities; and, subjectively, that the prison official acts with "deliberate indifference"-he knows of and disregards an excessive risk to inmate health and safety. Speed v. Stotts, 941 F.Supp. 1051, 1056 (D.Kan. 1996)(citing Brown v. Nix, 33 F.3d 951, 954-55 (8th Cir. 1994), citing Farmer v. Brennan, 511 U.S. 825 (1994)); Ajaj v. U.S., 293 Fed.Appx. 515, 532 (10th Cir. 2006); Smith v. Cummings, 445 F.3d 1254, 1257 (10th Cir. 2006).


## 2. Discussion

In his pleadings and Affidavits, plaintiff's allegations amount to that while he was in segregation at the LDC and sharing

42

a two-person cell with two other inmates he was not provided exercise outside his cell for 59 days, except for a few days, because the CCA was understaffed during the winter months. Even construing these allegations liberally and viewing the record in the light most favorable to Mr. McKeighan, his complaints do not plausibly come within the purview of the Eighth Amendment prohibition against cruel and unusual punishment. The denial of outdoor exercise or recreation for intermittent periods, even with one of 59 days or less, during a couple of winter months due to staff shortages together with the temporary placement of three inmates in a cell of the size described by plaintiff does not amount to a denial of life's necessities or present a sufficient serious potential for harm. These conditions, without more, do not show a deprivation that was sufficiently serious to implicate the Eighth Amendment.[27]  See Ajaj, 293 Fed.Appx. at 584 (Plaintiff's allegation that he was denied outdoor recreation for a year "is not sufficiently serious to implicate the Eighth Amendment."); see also Fogle, 435 F.3d at 1260 ("[A] factfinder might conclude that the risk of harm from three years of deprivation of any form of outdoor exercise was obvious and that [prison] officials disregarded that risk . . . ."); see also Bailey, 828 F.2d at 653 (recognizing that

---

[27]     Plaintiff does not describe particular conditions or effects that were atypical.  Instead, he alleges that all inmates in segregation were being denied recreation and suggests that each cell was overcrowded.  He even suggests in one of his numerous filings that the CCA was purposefully overcrowding all cells in an attempt to gain extra funding. Plaintiff's conclusory allegations regarding other conditions that were previously dismissed, such as dirty linens and clothing, cold temperatures, and cold food, cannot be used to elevate this claim to cruel and unusual punishment.  Nor can the denial of phone privileges be so used, given that there were clearly legitimate reasons for this restriction upon Mr. McKeighan.

courts have not deemed the denial of fresh air and exercise to be a "per se" Eighth Amendment violation).

Plaintiff's allegations that defendant DUSM Shute caused CCA officials to subject him to cruel and unusual conditions of confinement while in the segregation unit are supported by no factual allegations whatsoever. Plaintiff alleges no facts showing personal participation by defendant Shute in decisions regarding either the size or number of inmates in plaintiff's cell or the denial of outside recreation. Plaintiff also alleges no facts indicating defendants Shute or CCA employees "disregarded an excessive risk to plaintiff's health or safety." See id. at 581. In addition, he alleges no facts, which if proven, would establish that defendant Shute or any other defendant acted with a sufficiently culpable state of mind with respect to overcrowding or denial of recreation at the LDC.

Finally, the court finds that Mr. McKeighan alleges no facts showing that he suffered physical injury during this time in segregation due to the alleged denial of outside recreation and a crowded cell. His allegations of psychological and mental stress, without physical injury, do not state a claim under the Eighth Amendment. He filed the present action after the effective date of the PLRA, which provides in part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Tenth Circuit has interpreted the language

not as a bar to filing or pursuing a civil action for mental injury, but solely as a limitation on the remedies available. Searles v. Van Bebber, 251 F.3d 869, 879, 880-81 (10th Cir. 2001), cert. denied, 536 U.S. 904 (2002); see Murray v. Edwards County Sheriff's Dept., 248 Fed.Appx. 993, 995 (10th Cir. 2007), cert. denied, 553 U.S. 1035 (2008). The PLRA thus bars claims for damages for mental and emotional injuries arising out of Eighth Amendment violations absent a prior showing of physical injury. Perkins, 165 F.3d at 807.


## VI. CONCLUSION

In sum, the court finds that there is no material issue of fact regarding plaintiff's failure to exhaust administrative remedies on his two remaining claims. Accordingly, the court concludes that plaintiff's claims must be dismissed pursuant to 42 U.S.C. § 1997e(a) for failure to exhaust.[28] In addition, the court dismisses plaintiff's claims, sua sponte, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because plaintiff has failed to allege sufficient facts to state a federal constitutional violation.


**IT IS THEREFORE ORDERED** that the motions for summary judgment of defendants CCA employees George Green, Melanie Fulton, Sheldon Richardson, Robert Mundt, Ken Daugherty, Bruce Roberts, and Fredrick Lawrence (Doc. 33) and former DUSM Mike Shute (Doc. 48)

---

[28] The court acknowledges that dismissal of unexhausted claims on summary judgment should be without prejudice. See Fields, 511 F.3d 1109, 1113.

are sustained.

**IT IS FURTHER ORDERED** that this action is dismissed and all relief is denied as against all defendants, without prejudice, for failure to exhaust and for failure to state facts sufficient to support a federal constitutional claim.

**IT IS SO ORDERED.**

Dated this 30th day of September, 2010, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge